Ed Guth Realty, Inc., Respondent, *v.* Benjamin M. Gingold, as Commissioner of Assessment of the City of Syracuse, Appellant. (And Six Other Proceedings.)

Fourth Department, June 1, 1973.

Edward P. Kearse, Corporation Counsel (Thomas J. Lowery, Jr., of counsel), for appellant.

Smith, Sovik, Terry, Kendrick, McAuliffe & Schwarzer (Franklin J. Schwarzer of counsel), for respondent.

SIMONS, J. This is an appeal from a judgment of Supreme Court in a proceeding to review real estate tax assessments under article 7 of the Real Property Tax Law. The trial court found that the assessments on respondent taxpayer's property were illegal because of overvaluation and inequality during the years 1964–1970 inclusive. Appeal is also taken from a separate order and judgment of the court entered pursuant to subdivision 2 of section 716 of the Real Property Tax Law which ordered appellant city to pay respondent taxpayer's reasonable expenses in proving the inequality.

Respondent is the owner of real property known as 323 South Salina Street, Syracuse, New York, an area considered to be a 100% commercial location in that city. The land is 25.12 feet wide in front and back and 132 feet deep and is improved with a five-story building covering the entire area and occupied by one tenant. The first, second, and mezzanine floors are used by the tenant for a retail hobby shop and the offices of the business. The basement and other floors are partly used for storage space. The building is approximately 80 years old but has been remodeled and improved and is considered to be in generally good condition.

During the tax years 1964–1970, the real property was assessed for $212,200. In this proceeding, the respondent served demands on the appellant to admit that the ratio of the assessed value of real property of the tax district to its full value was as follows: 1964 — 47%; 1965 — 47%; 1966 — 46%; 1967 — 46%; 1968 — 46%; 1969 — 45%; 1970 — 46%. The appellant refused to admit the ratios and this trial followed. It is one of several cases challenging the assessments on property in downtown Syracuse.

The respondent sought to prove inequality by the three methods referred to in subdivision 3 of section 720 of the Real Property Tax Law, i.e., the use of the select parcels, actual sales during the years in question, and proof of the amount of the State equalization rate. The trial court relied on respondent's extensive evidence relating to the statistical reliability of the equalization rate and found that this was the " only method presently permitted under Real Property Tax Law § 720, to which any statistical worth or validity may be attached." (Finding No. 20.) Accordingly, based upon this finding, the trial court determined that the ratios for the respective years were the same as the State equalization rate, i.e., 1964 — 45% ; 1965 — 44% ; 1966 — 43% ; 1967 — 43% ; 1968 — 43% ; 1969 — 44% ; 1970 — 43%. While the equalization rate could be used as a basis for the court's decision for the year 1970, the statute, before its amendment in 1969, did not permit a finding of inequality in assessments for the years 1964–1969 based solely on that evidence. (*Matter of O'Brien* v. *Assessor of Town of Mamaroneck,* 20 N Y 2d 587, 595; *People ex rel. Yaras* v. *Kinnaw,* 303 N. Y. 224.)

A brief review of the history of subdivision 3 of section 720 of the Real Property Tax Law and the court decisions interpreting it aid our decision. In 1951, the Court of Appeals in *People ex rel. Yaras* v. *Kinnaw (supra)* held that under section 293 of the former Tax Law (predecessor to Real Property Tax Law, § 720, subd. 3), State equalization rates were inadmissible in a proceeding to prove inequality in assessments. The statute limited the proof to sample parcels and contemporaneous sales (see *People ex rel. Yaras* v. *Kinnaw, supra,* pp. 228–229). In 1961, the statute, then known as subdivision 3 of section 720 of the Real Property Tax Law was amended to permit parties to an inequality proceeding to introduce evidence of the State equalization rate for the tax roll containing the assessment under review. Subsequent to that amendment the Court of Appeals in *Matter of O'Brien* v. *Assessor of Town of Mamaroneck (supra,* p. 595) held that " although proof of the State rate of equalization is competent * * * such proof standing alone is insufficient to sustain the finding of inequality in a particular assessment." The court reasoned that the 1961 amendment to the statute did not eliminate the requirement for the selection of parcels and witnesses to prove inequality, but merely authorized the introduction of additional evidence. In 1969, following the *O'Brien* decision, the section was again amended. Whereas, prior to this amendment, the statute had

limited proof of inequality to select parcels, " except that evidence may be given by either party as to (1) actual sales of real property within the assessing unit that occurred during the year in which the assessment under review was made and (2) the state equalization rate established for the roll containing the assessment under review ", after the 1969 amendment the statute provided: " The parties shall be limited in their proof on the trial of such issue to such parcels and witnesses, *except that in any event, whether or not parcels are selected as hereinabove provided,* evidence may be given by either party as to (1) actual sales of real property within the assessing unit that occurred during the year in which the assessment under review was made and (2) the state equalization rate established for the roll containing the assessment under review." (Emphasis added.)

In light of this, it seems too obvious for dispute that the statute permits parties to an inequality proceeding to rely solely on evidence of contemporaneous sales or the State equalization rate. They are no longer required to submit proof of the value of select parcels (see 19 Buffalo L. Rev. 565, 568–569). However, the trial court could not base its decision on the provisions of the amended statute for the tax years 1964–1969 because the amendment applied only to proceedings commenced after its effective date, April 27, 1969 (L. 1969, ch. 302, § 2).

Although the trial court did not make any findings on the select parcels, we find sufficient evidence in the record upon which we may make appropriate findings and render a decision in the case (CPLR 5522; *Orman* v. *State of New York,* 37 A D 2d 674, mot. for lv. to app. den. 29 N Y 2d 488; *McCarthy* v. *Port of New York Auth.,* 30 A D 2d 111).

We have reviewed the appraisal evidence on each of the 10 select parcels and compared the aggregate full value as we determine it with the aggregate assessments to find ratios for the years in question. We have also reviewed the evidence of the value of the respondent's property to determine if it was assessed at a ratio that was " roughly equal " to the ratios that other properties in the city were assessed (*People ex rel. Hagy* v. *Lewis,* 280 N. Y. 184, 188). The ratios which we establish for the years 1964–1969 are based upon the evidence of the selected parcels but we take note of the fact that they are generally consistent with the equalization rates for the years involved. Our finding of the ratio for the year 1970 is based solely on the State equalization rate and without analyzing the selected parcels for that year.

The ratio of the assessed value of all real property in the City of Syracuse to its full value during the years in question, based upon the evidence of the select parcels chosen by the court, is as follows: 1964 — 45%; 1965 — 45%; 1966 — 50%; 1967 — 45%; 1968 — 45%; 1969 — 45%. The ratio for 1970, based upon the State equalization rate, is 43% (see addendum 1).

The parties were in reasonably close agreement as to the value of the respondent's land based upon available market data. The respondent claimed that the improvements had no economic value based upon an economic analysis of the building. Using the same method, the appellant's appraiser found a substantial value for the improvement. The trial court adopted respondent's evidence on the subject. We think this value urealistically low for a building in good condition which was purchased a few years earlier for $295,000. The respondent's estimates were based upon data for first-floor rentals without giving sufficient weight to the fact that the tenant used the first, second and mezzanine floors for the store operation and parts of the remaining floors for storage. We agree with the taxpayer's appraiser that it was neither accurate nor necessary to increase the values of the various properties by annual increments to reflect inflation. We have, therefore, determined the value of the tax parcel, as we did with the select parcels, by finding its full value for the years 1964, 1965, 1966 and 1967 at $350,000 (see addendum 2) and increasing the value to $364,000 for 1968, 1969 and 1970 to reflect inflationary economic trends (see addendum 3).

Applying the ratios to the full value, the assessed value of taxpayer's property should be: for the years 1964, 1965 and 1967 — 45% $\times$ $350,000 or $157,500, $67,500 of which is allocated to land; for 1966 — 50% $\times$ $350,000 or $175,000, $75,000 of which is allocated to land; for 1968 — 45% $\times$ $364,000 or $163,800, of which $74,700 is allocated to land; for 1969 — 45% $\times$ $364,000 or $163,800, of which $74,700 is allocated to land; for 1970 — 43% $\times$ $364,000 or $156,500, of which $71,380 is allocated to land. Since the property was assessed at $212,200 each year, the over-assessments are as follows: 1964 — $54,700; 1965 — $54,700; 1966 — $37,200; 1967 — $54,700; 1968 — $48,400; 1969 — $48,400; 1970 — $55,700.

The parties' evidence of actual sales during the various tax years was inconclusive and we have not based these findings on it. The appellant contends that the trial court improperly restricted it in offering proof of actual sales. We note that the city was repeatedly requested to stipulate more sales data into

evidence and its attorney refused these offers to broaden the proof on this part of the case ,by stipulation. Under the circumstances, appellant can hardly contend it was prejudiced.

The remaining points raised in the briefs require no comment.

The judgment should be modified to the extent that it is inconsistent with this opinion.

The judgment awarding reasonable fees and costs to respondent should be affirmed. In accordance with the modified judgment the award is for successfully proving that the ratio requested did not exceed the actual ratio for the 6 years, 1964, 1965, 1967, 1968, 1969, 1970.

GOLDMAN, P. J., MARSH, WITMER and MOULE, JJ., concur.

Judgment, entered June 30, 1972, unanimously modified on the law and facts in accordance with opinion by SIMONS, J., and as so modified affirmed with costs to respondent.

Judgment, entered December 22, 1972, unanimously affirmed with costs.

### SELECT PARCEL FINDINGS

| | 482 So. Salina St. | 112 E. Jefferson St. | 334 So. Salina St. | 462 So. Salina St. | 315 Warren |
|---|---|---|---|---|---|
| 1964 AV*............ | $39,500 | $90,000 | $284,000 | $400,500 | $281,000 |
| FV**.......... | 60,000 | 100,000 | 287,000 | 595,000 | 545,000 |
| 1965 AV............. | 39,500 | 90,000 | 284,000 | 400,500 | 281,000 |
| FV............. | 60,000 | 100,000 | 287,000 | 595,000 | 545,000 |
| 1966 AV............. | 39,500 | 90,000 | 284,000 | 400,500 | 281,000 |
| FV............. | 60,000 | 100,000 | 287,000 | 595,000 | 545,000 |
| 1967 AV............. | 39,500 | 90,000 | 297,625 | 400,500 | 281,000 |
| FV............. | 60,000 | 100,000 | 490,000 | 595,000 | 545,000 |
| 1968 AV............. | 39,500 | 90,000 | 304,950 | 400,500 | 281,000 |
| FV............. | 68,000 | 112,600 | 525,000 | 365,000 | 590,000 |
| 1969 AV............. | 42,300 | 90,000 | 304,950 | 400,500 | 281,000 |
| FV............. | 87,000 | 112,600 | 525,000 | 365,000 | 590,000 |

| | 701 E. Washington | 950 James St. | 1828 Burnet Ave. | 712 Hiawatha Blvd. |
|---|---|---|---|---|
| 1964 AV*.............. | $612,800 | $341,200 | $74,300 | $171,525 |
| FV**............. | 1,833,000 | 858,000 | 206,000 | 470,500 |
| 1965 AV.............. | 612,800 | 341,200 | 74,300 | 171,525 |
| FV.............. | 1,833,000 | 858,000 | 206,000 | 470,500 |

* AV — Assessed Value
** FV — Full Value

## SELECT PARCEL FINDINGS — CONTINUED

| | 701 E. Washington | 950 James St. | 1828 Burnet Ave. | 712 Hiawatha Blvd. |
|---|---|---|---|---|
| 1966 AV.............. | $862,800 | $338,800 | $74,300 | $171,525 |
| FV.............. | 1,833,000 | 858,000 | 206,000 | 470,500 |
| 1967 AV.............. | 862,800 | 346,800 | 74,300 | 171,525 |
| FV.............. | 2,335,000 | 858,000 | 206,000 | 470,500 |
| 1968 AV.............. | 862,800 | 451,775 | 53,375 | 201,525 |
| FV.............. | 2,335,000 | 1,266,000 | 175,000 | 547,000 |
| 1969 AV.............. | 862,000 | 451,775 | 53,375 | 201,525 |
| FV.............. | 2,335,000 | 1,266,000 | 175,000 | 547,000 |

| | 620 So. Midler Ave. | Totals | Ratio | Ratio Requested by Petitioner |
|---|---|---|---|---|
| 1964 AV*................. | $236,700 | $2,531,525 | 45% | 47% |
| FV**................. | 640,000 | 5,594,500 | | |
| 1965 AV................... | 236,700 | 2,531,525 | 45% | 47% |
| FV................... | 640,000 | 5,594,500 | | |
| 1966 AV................... | 236,700 | 2,779,125 | 50% | 46% |
| FV................... | 640,000 | 5,594,500 | | |
| 1967 AV................... | 234,200 | 2,798,250 | 45% | 46% |
| FV................... | 563,000 | 6,222,500 | | |
| 1968 AV................... | 234,200 | 2,919,625 | 45% | 46% |
| FV................... | 563,000 | 6,546,600 | | |
| 1969 AV................... | 234,200 | 2,922,425 | 45% | 45% |
| FV................... | 563,000 | 6,565,600 | | |
| 1970 By State Equalization Rate...................... | | | 43% | 46% |

ADDENDUM 1

### Valuation of 323 South Salina Street

#### 1964–1967

| | | |
|---|---|---|
| Gross Annual Income.................................. | $45,000 | |
| less 3% vacancy and rent loss......................... | 1,350 | |
| Effective Gross Income...................................... | | $43,650 |
| Expenses | | |
| Taxes.......................................... | $14,903 | |
| Insurance........................................ | 550 | |
| Maintenance & Management......................... | 487 | |
| Repairs......................................... | 400 | |
| Total.......................................... | $16,340 | |

* AV — Assessed Value
** FV — Full Value

| | |
|---|---:|
| Net Annual Income.......................................... | $27,310 |
| Capitalization | |
| Less: Interest on Land Value $150,000 at 6%.................... | 9,000 |
| | 18,310 |
| $18,310 capitalized at 9% (6% + 3%) ........................ | 203,444 or |
| Total to improvements...................................... | 200,000 |
| Add Land Value........................................... | 150,000 |
| Full Value............................................... | $350,000 |

ADDENDUM 2

### Valuation of 323 South Salina Street

### 1968–1970

| | | |
|---|---:|---:|
| Gross Annual Income................................... | $53,000 | |
| less 3% vacancy and rent loss......................... | 1,590 | |
| Effective Gross Income................................ | | $51,410 |
| Expenses | | |
| Taxes............................................ | $18,298 | |
| Insurance........................................ | 550 | |
| Maintenance & Management......................... | 634 | |
| Repairs.......................................... | 400 | |
| | | 19,882 |
| Net Annual Income.................................... | | $31,528 |
| Less: Interest on Land Value $166,000 at 6.5%......... | | 10,790 |
| | | $20,738 |
| Capitalization | | |
| $20,738 capitalized at 10.5% (6.5% + 4%)............. | | $197,504 or |
| Total to improvements............................... | | 198,000 |
| plus Land Value.................................... | | 166,000 |
| Full Value........................................... | | $364,000 |

ADDENDUM 3