OPINION OF THE COURT
Edward M. Horey, J.
The contentions between the plaintiff and defendant concern a certain sight draft delivered by defendant’s predecessor in interest to the plaintiff. The sight draft in issue was dated November 30,1973 and was in the sum of $476. The moneys recited in the sight draft were not payments due under the provisions of the two oil and gas leases which were executed simultaneously with the sight draft. While the amount of the draft was computed on the basis of the amount of acreage involved in the two oil and gas leases (totaling 476 acres), the payment was in the nature of a bonus given the plaintiff by defendant’s predecessor in interest as additional consideration for the execution of the two leases by the plaintiff as lessor.
*957 The terms of the sight draft provided that it would be payable by the maker within 60 days of sight and subject to approval of title. The terms further provided that the plaintiff was to “collect directly through the Huntington National Bank, Dublin-Gran ville Road, Maple Canyon Branch, Columbus, Ohio, 43229.”
The manner in which the plaintiff sought to collect on the sight draft is of paramount significance. What she did was to mail the sight draft to her bank, the Manufacturers and Traders Trust Company in Ellicottville, New York, for deposit in her checking account.
The manner in which the Manufacturers and Traders Trust Company handled the transaction is of equal paramount importance. That bank through its employees credited the plaintiff’s checking account with $476 and forwarded the sight draft through the Federal Reserve banking system in the same manner as is provided for checks and other items payable by a drawee bank.
When the sight draft reached the Huntington National Bank, it was presented for payment rather than for collection.
In the same manner as would attend the procedure of a typical check, it appears that by the time the sight draft reached the Huntington Bank, the Federal Reserve had already withdrawn $476 from the Huntington Bank and transferred it to the account of the Manufacturers and Traders bank in Ellicottville, New York. It was this feature of the transaction that prompted the Huntington Bank to immediately return the sight draft through banking channels to the Manufacturers and Traders bank in Ellicottville. This action was taken by the Huntington Bank in accordance with banking rules provided under article 4 of the Uniform Commercial Code. Those rules provided that the sight draft having been paid as a check had to be returned no later than midnight on the day it was received if it was to be dishonored. (Uniform Commercial Code, § 4-211, subd [2].) If the time schedule for return had not been complied with, the banking rules provided that the provisional payment which had already been made by withdrawal from Huntington Bank funds and transferred to Manufacturers and Traders funds would become final *958 and the Huntington Bank would have become the owner of the sight draft. (Uniform Commercial Code, § 3-306.)
Note is made at this point that the sight draft in issue was not a negotiable instrument because the maker’s promise to pay was conditional on approval of title by the maker. (See Uniform Commercial Code, § 3-104.) A retention of the sight draft through failure to promptly return would have resulted in the ownership of the draft by the Huntington Bank. That would have subjected the Huntington Bank to any defenses which the maker might have asserted against the conditional payee, the plaintiff. (See Uniform Commercial Code, § 3-306.)
Upon the return of the sight draft to the Manufacturers and Traders Trust Company, that bank canceled its prior credit of payment to the plaintiff’s checking account and returned the draft to her. As returned the draft contained two notations. One notation was that which had been made by the Huntington Bank, to wit: that the draft was “not a cash item”. The other notation made by the Manufacturers and Traders Trust Company advised that prior credit of payment to the plaintiff’s account had been canceled.
It appears without dispute that the Huntington Bank never gave notice to the maker of the sight draft, that the same had been received and returned. The maker of the sight draft, ignorant of the attempt of the plaintiff to collect on it, made assignments of the two oil and gas leases.
It further appears without dispute that the assignees of the two leases fully complied with the terms of the leases. In particular they paid to the plaintiff the quarter annual rentals which were provided under the lease. Such payments were by check payable to plaintiff’s order. The plaintiff retained the checks but never cashed them. Neither did the plaintiff ever advise the maker of the draft, nor the original lessee, nor any subsequent assignee of the leases that she considered the leases to be invalid.
Sometime between October, 1981 and November 30, 1983 the last assignee of the two oil and gas leases attempted to enter upon the property covered by the two leases for the purpose of drilling. The plaintiff refused to let the lessee by assignment enter onto the leasehold. It *959 was then that the plaintiff commenced the action at bar. While the definitive date is not shown in the evidence, the attempt to enter and drill was clearly within the base or primary term of the lease which would have expired on November 30, 1983, 10 years after its inception.
The plaintiff contends that the two oil and gas leases are ineffective and in this action for a declaratory judgment prays that the court make such a determination. The defendant contends that the leases are in force and effect and prays for the dismissal of the plaintiff’s complaint.
Expert testimony was adduced upon the trial of the proper method for presentation of a sight draft. This court finds that the proper method for presentation of the sight draft in issue was by presenting the same to the Huntington Bank for collection. The court further finds that the proper measure was not to present the sight draft to the Huntington Bank for payment as was done. The key error that was made was in the manner in which the sight draft was forwarded by the Manufacturers and Traders Trust Company to the Huntington Bank. Clearly the Manufacturers and Traders Trust Company was an agent of the plaintiff and the court so finds. The court does not agree with the plaintiff’s contention that the Huntington Bank was an agent of the maker of the sight draft in the instance of the particular draft in issue. It would have been such an agent if the sight draft had been presented to the Huntington Bank for collection according to the terms of the draft for it is undisputed that the maker had constituted the Huntington Bank as his agent for collection on such draft. The sight draft was never presented for collection. When presented, it was presented as a check for payment. Such a presentation was in marked contrast to the presentation for collection which was provided under the terms of the draft. Those terms were for payment “sixty (60) days after sight and subject to approval of title”. Under a proper presentation the Huntington Bank as drawee and as agent for the maker would have been required to notify the maker of the receipt of the draft and of its terms. According to such terms the maker would have had 60 days in which to make up his mind as to whether he approved the title of the plaintiff in the leasehold lands.
*960 While every inference indicates that the Huntington Bank would have accepted its role as agent for collection, the improper presentation of the sight draft to it for payment impaired its right to act in that capacity. This is for the reason that acceptance of the nonnegotiable sight draft with retention past midnight would have metamorphasized the Huntington Bank from an agent for collection into an owner of a sight draft which specifically contained yet undetermined conditions for payment by the maker. (See Uniform Commercial Code, § 3-104, subd [1], par [b], and § 3-306, subds [a]-[d], all of which subdivisions appear to be applicable, and § 4-211, subd [2].)
This court is sympathetic to a degree to the argument of plaintiff that she personally did nothing wrong and consequently should not be denied relief. While it appears true that the error which was committed was that of the Manufacturers and Traders Trust bank, the fact remains that that bank was her agent. Further, this court notes that for a period of nearly eight years the plaintiff never notified the maker of the note of the fact of nonpayment of the sight draft; nor did she ever return any of the checks for rental payment after their receipt, nor did she give notice to the original lessee or to any assignee of those leases that her position was that the leases were invalid.
The evidence is undisputed that the maker of the sight draft at all times had and continues to have sufficient moneys on deposit with the Huntington Bank to pay the sight draft in issue. The evidence is also undisputed that the maker of the draft approved the title to the leasehold lands within 60 days and then made an assignment of them. In brief, there is nothing in the record which would have prevented the plaintiff from securing payment of the sight draft upon proper presentation of it at any time in the eight years that elapsed after execution and delivery of the draft and before the time drilling upon the leaseholds was attempted. Nor is there anything which would prevent the plaintiff from securing payment today or tomorrow or the day after if the sight draft was again presented to the Huntington Bank for collection. This court finds that the only failure of consideration that attended the leases in issue was occasioned by the improper conduct of the plaintiff’s agent bank, the Manufacturers and Traders Trust *961 Company, in forwarding the draft for payment instead of collection and the subsequent failure of the plaintiff personally to make any attempt to secure payment of the sight draft.
It is a general principle of equity that where a prejudicial situation has resulted from the wrongful act of a third person, the decision must be against the party whose conduct made possible the wrongdoer’s act. As between two innocent parties, one of whom must suffer the consequence of wrongdoing, the one who made it possible by his act of confidence must bear the loss. (See 27 Am Jur 2d, Equity, § 147, pp 683-684, and the several cases there cited; see, also, Wood v Steele, 6 Wall [73 US] 80, 82, stating that “he who has put it in the power of another to do the wrong, must bear the loss”; to the same effect are Bank of Pittsburgh v Neal, 22 How [63 US] 96, and National Safe Deposit Co. v Hibbs, 229 US 391.)
It is also a maxim of equity that “equity aids the vigilant, not those who slumber on their rights”. (McClintock, Equity, p 29.) This principle is well settled in the decisional law of New York. (Valentine Gardens Coop. v Oberman, 237 NYS2d 535; Fritsch v Rarback, 199 Misc 356; Caspert v Anderson Apts., 196 Misc 555; Ciufo v Ciufo, 186 Misc 1000; Savings Bank v New York Trust Co., 27 NYS2d 963.)
It is the decision of this court that both cited principles of equity have application to the plaintiff in the case at bar. They compel the determination which is made, to wit: that the plaintiff’s complaint be and the same is dismissed.
In its brief, the defendant National Fuel Gas Supply Corporation, seeks equitable relief from this court by way of an adjudication of an extension of the term of the leases as a consequence of the delay which has been caused by the plaintiff’s denial of access to the leaseholds and her refusal to permit the defendant to drill, within the time provided in the leases. A review of the defendant’s amended answer, however, unfortunately contains no action, or claim or counterclaim or even a prayer for affirmative relief. It seeks only a dismissal of the plaintiff’s complaint. Thus, while the court finds the arguments for extension of drilling time to be persuasive and meritorious, the court nonetheless concludes that the issue of extension of the terms of *962 the leaseholds is not involved in the litigation before the court. If not resolved amicably as a consequence of the decision which has been made herein it is the opinion of the court it must be made a matter of additional litigation. Of course the relative rights between the plaintiff and the Manufacturers and Traders Trust Company, as her agent, are in no way determined in this action. If not resolved amicably, they also must be determined in other litigation.
Judgment dismissing the complaint is to be entered on this decision in favor of the defendant and against the plaintiff.
In view of the decision which has been made in this action between plaintiff and defendant, there is no necessity that a further trial be had between the defendant as a third-party plaintiff and John R. Murphy, doing business as Murphy Oil Company as a third-party defendant. The issues in the litigation between those parties have been rendered moot by the determination reached in the action between the plaintiff and defendant.