OPINION OF THE COURT
John F. Lawton, J.
At issue in these proceedings is the determination of the equalization rates for the City of Syracuse to be applied for tax years 1976, 1977, 1979, 1980, 1981 and 1982.
CONTENTIONS OF THE PARTIES
Petitioners contend that the best evidence of the true equalization rate is that found by the State Board of Equalization and Assessment (SBEA). The equalization rates, as found by the SBEA, for the years in question are as follows:
1976 35.27
1977 34.04
1979 27.80
1980 25.34
1981 22.95
1982 22.93
*900 Respondent contends that the better method for determining the true equalization rate is to use the all sales method, as provided for under Real Property Tax Law § 720. The equalization rates, as found by experts for the respondent, for the years in question are as follows:
Weighted Unweighted
1976 37.69 36.67
1977 35.67 33.97
1979 30.61 29.01
1980 29.11 27.61
1981 29.40 26.98
1982 31.00 30.08
TRIAL
In support of their contentions, petitioners, as part of their direct case, introduced into evidence the findings of the State Board, and through expert testimony, explained the methodology employed by the State Board in arriving at its conclusions. Prior to 1979, the State Board employed two different methods of arriving at its findings, viz., sales method and random sampling of appraisals. Since 1979 the State Board has used the statistical method of random selection of appraisals exclusively, and no longer considers sales within the taxing district in arriving at its findings.
Mr. Samuel Stein, a former key employee of the State Board, testified in detail as to the various categories of property considered and their applicability to the City of Syracuse for the years in question and as to the various monetary levels within each category chosen for random sampling.
Respondent, in its case, through the testimony of realtors, Myron A. White and John E. Nicol, introduced into evidence an all sales survey of sales which occurred within the City of Syracuse during each of the years in question between July 1st of the period two years preceding and June 30th of the preceding year, e.g., for tax year 1979, only those sales which occurred between July 1, 1977 and June 30, 1978 are to be considered. Mr. White testified as to the methodology employed by himself and his staff in assembling the sales to be considered; the methodology he used in screening the sales to determine whether they were of an arm’s length nature; and the use of said raw data in arriving at an equalization rate. In the latter regard, respondent’s experts employed two methods, i.e., a weighted and unweighted method, of arriving at their proposed equalization rates. The unweighted method is the more conventional method obtained by dividing the total of the individual *901 sales prices by the total of the assessments for said properties. The weighted method is more of a hybrid, whereby the respondent’s experts categorized and stratified the sales in a manner similar to that employed by the SBEA.
The balance of respondent’s case was to introduce expert testimony criticizing the SBEA’s methodology as a whole and attacking some of the individual appraisals employed by the SBEA in particular. Principal among the objections raised as to the SBEA’s methodology is the fact that there is a built-in time lag; not all categories of properties are sampled; the limited number of sample appraisals employed; the possibility of human error in the appraisals; and the failure to give any consideration to current sales after 1979.
Petitioners on redirect introduced expert evidence attacking the methodology employed by the respondent’s experts in arriving at their conclusions and questioning the validity of the all sales method itself. Petitioners in this respect contend that substantial numbers of sales, as recorded by the Onondaga County Property Tax Office, were unaccounted for and were not part of the all sales average considered by the respondent’s experts. Petitioners’ experts also attacked the methods employed by the respondent’s experts in determining whether a sale was in fact arm’s length or not, both as to the qualifications of the personnel employed for such purpose, and as to their failure to record and keep adequate documentation of their findings. Expert testimony, principally by Professor Sherman Chottiner, was also received, wherein he testified as to the preferability of a random sampling method of the SBEA over the all sales method. Principal amongst his reasons in arriving at this conclusion is the failure of the all sales method to employ random probability sampling, which results in bias or error which is unmeasurable, but which far exceeds the minimal measurable error that accompanies a truly random sampling. Dr. Chottiner further criticized the all sales method for its failure to have a proper balance between the various categories of property which likewise can result in bias or error.
LAW
Much has been written with respect to the history of Real Property Tax Law § 720, and no worthwhile purpose would be served by a further recital herein (see, Guth Realty v Gingold, 41 AD2d 479, affd 34 NY2d 440 [1974]; Matter of Standard Brands v Walsh, 92 Misc 2d 903, affd 60 AD2d 605 [1977]; 860 Executive Towers v Board of Assessors, 84 Misc 2d 525, affd 53 AD2d 463, affd sub nom. Matter of Pierre Pellaton Apts. v Board of Asses *902 sors, 43 NY2d 769 [1977]). Suffice it to say that Real Property Tax Law § 720 as now in effect (see, Matter of Colt Indus. v Financial Administrator, 54 NY2d 533 [1982]) provides three distinct methods for arriving at an equalization rate to be used in determining a certiorari proceeding, viz., selected parcels method, State Board of Equalization and Assessment rate, and the all sales method. The selected parcels method, although the longest in tenure, has fallen into disregard and is no longer generally employed.[1]
A growing number of cases have been decided wherein the courts seem to first make a determination as to which of the two remaining methods is the most appropriate to the facts of the case and then adopting that rate in arriving at a final assessment (860 Executive Towers v Board of Assessors, supra; Matter of Standard Brands v Walsh, supra; Matter of Swanz v Brant, 52 AD2d 1071 [4th Dept 1976]; Stemmer v Town of Pompey, Sup Ct, Onondaga County, Feb. 29,1984; Rab Co. Riviera Ridge Apts. v Neal, Sup Ct, Broome County, decided Apr. 26, 1982). Each of the parties herein seems to have adopted this approach in that each argues that the other party’s approach is totally erroneous and, therefore, does not merit consideration. Such an approach, however, appears to be somewhat contradictory to the wording of the statute. The Legislature at the time of Real Property Tax Law § 720’s adoption was well aware of the strengths and weaknesses of each of the methods, but nevertheless determined that both methods were acceptable. Therefore, in the absence of proof that either one of the methods lacks any credibility whatsoever, this court will not determine which of the two methods to accept, but rather will determine the weight that will be given to each method in accordance with the proof in this case.[2]
LAW APPLIED TO FACTS OF THIS CASE
Pursuant to instructions and limitations imposed by this court during the trial, the respondent was not permitted to challenge each of the State’s appraisals over all the years in controversy as it would have resulted in protracted and multiple side issues. Additionally, to have permitted such a widespread attack on the State’s appraisals would have been unfair in that the State’s appraisers were not present to defend their determinations. Of *903 the several appraisals that were examined, however, sufficient evidence was presented to raise some legitimate questions as to the total validity of the appraisals. For example, for the year 1978, the SBEA’s appraiser appraised the Marine Midland Bank property located at 125 East Jefferson Street, Syracuse, New York, at $7,700,000. Said property was the subject of a prior certiorari proceeding wherein a court, after a full hearing on the question of value, determined the fair market value of said property to be but $4,100,000 for the same year. When said fact was pointed out to the Board at a hearing brought by the City of Syracuse to challenge the SBEA’s rate for that year, the SBEA, in its opinion denying the city’s appeal, rather cavalierly dismissed said fact with the comment that the trial court, in making its determination of value “had great difficulty in separating fact from fiction”. The city, as a result, was placed in the untenable position wherein for purposes of establishing value in a certiorari case, a court finds one value, but for the purposes of establishing an equalization rate, the State Board of Equalization values the very same property at a substantially higher value, thereby resulting in an over-all lower equalization rate. This truly is a “heads, I win; tails, you lose” situation against the city. A similar situation has occurred regarding other property located in downtown Syracuse.
The city’s experts’ findings are equally, if not more, open to serious question. In some of the years in question, substantial numbers of sales were not even considered by the city’s experts in that the gross count recorded by the County Tax Department was substantially higher than the number of sales considered by the city’s experts. In addition, while purportedly substantial sums of money and numerous man-hours were spent reviewing and checking the sales that were considered, little by way of record keeping remains today whereby the methodology and results can in any way be documented or checked. The result is an almost blind conclusion on the part of the city’s experts. A spot check of the LA23 forms employed by the city’s experts disclosed that in addition to not being complete, that there was some duplication of those that were considered and at least one zero consideration sale. Further, petitioners demonstrated that different geographic areas and different classifications of property were assessed at widely different ratios. Additionally, it was shown that the inclusion of an abnormal number of sales from one geographic area or another, or of one type of property, can have a large effect upon the resulting equalization rate.
Respondent’s experts attempt to use a combined statistical and all sales method to come up with a weighted equalization *904 ratio which is arrived at by inserting the sales data into the SBEA formula for the classifications of properties (residential, commercial, etc.) and value intervals used in determining its equalization rate. In doing so, the respondent’s experts arrived at ratios that were .92 to 2.42 points higher than under the unweighted method.
It is the opinion of this court, however, that use of the unweighted ratio rather than the weighted ratio is the more appropriate manner of determining an equalization ratio from an all sales study. The courts of this State have consistently approved the use of the unweighted ratio approach (People ex rel. Hagy v Lewis, 280 NY 184 [1939]; People ex rel. Yaras v Kinnaw, 303 NY 224 [1951]; Matter of Rochester Sav. Bank v Wagner, 34 AD2d 164 [4th Dept 1970]; Matter of Borst v Board of Assessors, 6 Misc 2d 945 [1957]). By using the weighted method, the respondent attempts to combine the statistical approach of the State Board with the nonstatistical all sales method. In determining a ratio based on an “all sales method,” all sales should be aggregated to determine the ratio rather than attempting to categorize the sales into an inapposite statistical methodology. Additionally, the testimony adduced at trial showed that respondent’s attempt to duplicate SBEA’s categorization and interval valuation could not be accomplished, but rather intervals had to be collapsed, combined or not used because there were no sales available within that category or value interval. Real Property Tax Law § 720 provides for an “all sales approach method,” and not a combination all sales-random statistical method, as attempted by the respondent’s experts. Therefore, the weighted ratios presented by the respondent are rejected.
There has been no showing, however, that the different methods employed by either of the parties have no validity whatsoever as to the facts of the present case so as to warrant their total disregard. A comparison of the equalization rates relied upon by each of the parties shows that there is a general similarity in results of each of the two methods over the years in question. Both methods show a generally steady decline in the equalization rate, which can be expected in times of steady rises in property values with no corresponding changes in assessments. For the years 1976 to 1980, there appears to be minimal differences between the two rates obtained under each of the methods. It is only for the years 1981 and 1982 that there appears to be a widening of differences between the two proposed rates.
The following are this court’s findings as to the applicable equalization rates for the years in question:
*905 1976 35.5
1977 34.0
1979 28.0
1980 26.0
1981 24.5
1982 25.0
In arriving at the above determinations, this court has given consideration to each of the different methods employed by the respective parties. Somewhat greater weight, however, has been accorded to the SBEA method in this instance, not because this court believes that it is a better or more acceptable method, but rather that overall, in this instance, said evaluation was done with a greater degree of care and precision than that submitted by the respondent. Further, with respect to the respondent’s criticism that the statistical method employed by the SBEA involves unreasonable time delays, the proof shows that said delays favored the respondent’s position. In this respect, it is noted that in all cases wherein two surveys were employed by the SBEA and thereafter averaged together to arrive at an annual rate, the most recent survey always resulted in a lower rate. Without any clear reason being given as to why there should be such a large increase in the differential between the rates arrived at under each of the two methods for the years 1981 and 1982, this court has again given somewhat more weight to the SBEA’s method for the years 1981 and 1982. In doing so, this court is giving more stability to property assessments and annual assessment procedures. Real property assessments should not fluctuate wildly from year to year when there has been no change in the property itself. Neither should equalization rates fluctuate greatly from year to year when there has been no change in economic conditions or assessment policies which can clearly account for such a change. No proof has been submitted to justify the major increase in the equalization rate for the year 1982 as proposed by the respondent. Furthermore, were the courts to sanction drastic changes in annual equalization rates based upon hindsight information, it would make it nearly impossible for local assessors who must act prospectively to annually assess properties, and for property owners to determine whether their properties have been fairly assessed for each new year.

. See, Matter of Mid-Island Shopping Plaza v Poedyn, 25 Misc 2d 972, affd 14 AD2d 571, affd 10 NY2d 966; Guth Realty v Gingold, supra; 860 Executive Towers v Board, of Assessors, supra.

. In doing so, this court is mindful that the burden of proof rests on the petitioners (Matter of Tilsac Corp. v Assessor of Town of Huntington, 55 Misc 2d 431, affd 41 AD2d 604 [2d Dept 1973]).