BERTHA E. STUDLEY, Appellant, v NATIONAL FUEL GAS SUPPLY CORPORATION, Respondent. (And a Third-Party Action.)

Fourth Department, March 1, 1985

### APPEARANCES OF COUNSEL

*Gross, Shuman, Brizdle, Laub & Gilfillan, P. C. (Robert J. Feldman* of counsel), for appellant.

*Peter G. Terranova* for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J. P.

In her declaratory judgment action, plaintiff seeks to invalidate two written oil and gas leases given originally to a lease broker — third-party defendant John R. Murphy, doing business as Murphy Oil Company (Murphy) — a prior assignor of defendant. During the nonjury trial she sought to prove under the rule stated in *Hicks v Bush* (10 NY2d 488) that the leases were

ineffective because they were delivered subject to an oral condition that they not take effect until she cashed a draft in the amount of $476 given to her when she signed the leases. In a written decision finding the leases to be valid, the court dismissed her complaint without ruling on the admissibility or the effect of the claimed oral condition precedent. We conclude here that plaintiff's arguments respecting the alleged oral condition are without merit and that there is no other basis for invalidating the leases. There should be a modification and, in lieu of an order of dismissal, a declaration of the rights of the parties as hereinafter set forth (*see, Matter of Slominski v Rutkowski,* 62 NY2d 781).

Plaintiff testified that she and Murphy's agent, Hoogland, executed the two leases (which are on identical forms and cover two separate parcels of farmland totaling 476 acres) on November 30, 1973 in the kitchen of her home. Before she signed, Hoogland, according to plaintiff, said that "he would pay * * * a dollar an acre then and a dollar an acre for each year after." The draft in the amount of $476, which Hoogland prepared while plaintiff was signing, provides that it is payable "Sixty (60) Days After Sight and Subject to Approval of Title" and that it is consideration for "One year rental payment, on oil and gas leases, Nov. 30, 1973." It bears the direction to "COLLECT DIRECTLY THROUGH The Huntington National Bank, Dublin-Granville Road, Maple Canyon Branch, Columbus, Ohio 43229". When Hoogland gave her the draft, plaintiff says that he stated, "[I]f you don't want the lease, just don't cash the check and that will void the lease." She assumed the draft was a check and that she could deposit or cash it as such. Plaintiff's son, Robert Studley, who was present when his mother and Hoogland executed the leases, confirmed her testimony, but Hoogland did not testify.

In the leases, plaintiff "in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the covenants and agreements herein contained" grants to the lessee "all of the oil and gas and/or the constituents of either, in and under" the described lands together with drilling and other rights "for a term of ten (10) years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon, or operations are maintained on" the described property. In addition to the acknowledged receipt of $1, about which plaintiff raises no question, the leases specify as consideration that the lessor is to receive one eighth of the oil produced and the field market price for one eighth of all gas marketed from the premises. Lessee agrees to "commence a well on said

premises *within One Year from this date* or pay to Lessor [a total of $476 for the two leases] * * * each year, *payable quarterly thereafter* until said well is commenced or [the] lease surrendered" (emphasis added). The leases provide for no rental or other consideration for the first year.

Plaintiff did nothing with the draft until January 1974 when, instead of sending it for collection to the Huntington branch bank in Ohio, she mailed it to her bank, a Manufacturers & Traders Trust branch bank (M & T) in Ellicottville, New York, for deposit in her account. Her bank apparently treated the draft as a check and submitted it not to the Huntington branch bank for collection but through banking channels in the ordinary course for payment as a cash item. (The sight draft is not a negotiable instrument because it is not an unconditional promise to pay [*see,* UCC 3-104 (1) (b)].) The Huntington branch bank refused to honor the draft and returned it through channels with the notation, "not a cash item." On the return of the unpaid draft, plaintiff's depository bank, M & T, canceled the credit to plaintiff's account and returned the draft to her. Although the draft was still valid, plaintiff did not attempt to collect on it because, she testified, she "figured [Murphy] was a flaky company." One year after execution of the leases Murphy's assignee began sending rental checks to plaintiff in accordance with the lease terms. She never again tried to negotiate the draft and never sought to deposit or cash the rental checks. Nor did she return the instruments but instead retained them without ever advising Murphy or his assignees of her intentions. She believed that she had been given a "bad draft", she said, and when she learned that a subsequent assignee of defendant's drilling rights intended to drill on her land in 1981, she "told them not to because * * * the lease was no good."

Murphy testified that as a lease broker he was authorized to obtain leases for Columbia Gas Transmission Corp. (Columbia) in Cattaraugus County and that Hoogland, as one of his land agents, had authority to execute leases and sign drafts on his behalf. He paid the landowners by draft and not by check so that he could withhold approval of payment until he was sure that the leases were properly signed. Under his operating arrangement with Columbia, Murphy's practice was to obtain leases in his name and assign them to Columbia irrespective of whether the drafts had yet been paid by the Huntington branch bank. In the case of plaintiff's leases, he assigned them to Columbia in December 1983 *before* plaintiff attempted to deposit the draft.

The trial court (125 Misc 2d 956) rejected plaintiff's argument that the $476 payment (represented by the draft) was part of the

consideration for the leases and that since the draft was not the equivalent of cash the leases were invalid for failure of consideration. It held that the $476 draft was a "bonus" rather than consideration due under the terms of the leases. This was clearly correct. (The only rent reserved under the leases is to be paid quarterly commencing *after the first year,* assuming that no well has then been drilled, and there is no mention of any initial payment, other than the one dollar.) The court reserved decision on defendant's objections to the testimony concerning the alleged oral condition precedent but did not rule on the question at any point during the trial or in its decision. It is the main question on appeal.

The relevant principles are settled and simply stated. "Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement * * * if the condition does not contradict the express terms of such written agreement" (*Hicks v Bush,* 10 NY2d 488, 491, *supra; see, Smith v Dotterweich,* 200 NY 299; Richardson, Evidence § 613 [Prince 10th ed 1973]; 4 Williston, Contracts § 634 [Jaeger 3d ed 1961]). The purpose of such evidence is not to vary the agreement but to establish that it never became legally effective (*see,* Richardson, Evidence § 613 [Prince 10th ed 1973]). On the other hand, the parol evidence rule bars proof of an oral agreement that a written contract, which is binding when made and delivered, may be canceled upon the happening of a condition subsequent (*see, Jamestown Business Coll. Assn. v Allen,* 172 NY 291; Richardson, Evidence § 613 [Prince 10th ed 1973]; 4 Williston, Contracts § 634 [Jaeger 3d ed 1961]). Such an agreement would necessarily alter the terms of the written contract.

In *Hicks v Bush (supra),* the court held that parol evidence was admissible to show an agreement by parties to a merger contract that the contract "was executed 'upon a parol condition' that it 'was not to operate' as a contract and that the contemplated merger was not 'to become effective' until so-called 'equity expansion funds', amounting to $672,500, were first procured" (*Hicks v Bush, supra,* p 490). The court, in holding that the term was an oral condition precedent, found no contradiction between the oral condition and the writing and noted that the parol agreement pertained to a matter on which the written agreement was silent (*Hicks v Bush, supra,* p 492; *cf. Fadex Foreign Trading Corp. v Crown Steel Corp.,* 272 App Div 273, 274-276, *affd* 297 NY 903, in which the condition precedent was not only contradictory to the written agreement but would, if operative, actually annul the express terms of the writing).

*Jamestown Business Coll. Assn. v Allen* (172 NY 291, *supra*) is illustrative of an oral condition found not to be admissible. In a suit on a promissory note, the trial court had permitted defendant to testify over objection that "the note in suit was not to be paid if she should decide not to attend plaintiff's school and could not sell her scholarship" (*Jamestown Business Coll. Assn. v Allen, supra*, p 294). In holding that admission of the testimony was error, the court stated: "The defendant says, in substance, that the note became effective at once and was to be binding upon her unless she should decide not to take instructions at plaintiff's school and could not sell her scholarship, in which event it was to be canceled and she was not to be called upon to pay it. Had the parties agreed that the note should not be regarded as completely delivered until the defendant should take such instructions, or until she could sell her scholarship, it would not have become operative until either of these events had transpired. The agreement which the parties did make was just the reverse of that" (*Jamestown Business Coll. Assn. v Allen, supra*, pp 295-296).

The question here is whether in the context of the entire transaction we should interpret Hoogland's statement to plaintiff, "[I]f you don't want the lease, just don't cash the check and that will void the lease", as meaning that the leases would not become effective until plaintiff cashed the draft. Arguably, the statement can be construed as making the leases subject to a condition subsequent that they will cease to be effective if plaintiff decides not to negotiate the draft (*see, Jamestown Business Coll. Assn. v Allen, supra*), but we need not resolve that question. We must decide simply whether the statement should have been admitted as creating an oral condition precedent (*see, Hicks v Bush, supra*).

■ Nothing in the leases or the draft or the circumstances of their preparation, signing and delivery suggests that the leases were not intended to be effective as of that date, and nothing would have prevented the immediate commencement of drilling by Murphy or its assignees. Although the draft by its terms was not payable until 60 days after sight and was conditioned upon approval of title, Murphy testified that it would be paid provided that the leases were properly signed, before or after assignment of the leases.

Taken alone, Hoogland's words, "[I]f you don't want the lease, just don't cash the check and that will void the lease", cannot be viewed as creating a prototypical condition precedent. Hoogland certainly does not indicate that the leases are not to become

fully effective at the time of execution. He specifies no event or condition upon the occurrence of which the leases are to be binding. On the contrary, the claimed condition here is a non-happening, i.e., plaintiff's inaction — her failure to cash the check — a contingency which could "happen" (without the lessee's ever knowing of it) at any time during the 10-year terms of the leases and at plaintiff's private whim (*compare, e.g.,* in addition to *Hicks v Bush, supra; Niblock v Sprague,* 200 NY 390, 391, an action on promissory notes where the admissible condition precedent was that " 'the said notes were to have no inception until the plaintiff had kept his agreement, said partnership debts were paid' " and a direction had been given " 'to deliver said notes to the plaintiff' "). If anything, Hoogland's statement suggests that the leases were intended to be valid when executed and delivered but were subject to a condition subsequent, i.e., the "voiding" of the leases at some indefinite time in the future on plaintiff's failure to act (*see, Jamestown Business Coll. Assn. v Allen, supra*).

The conduct of the parties after November 30, 1973 clearly bespeaks their belief that the leases had become fully effective when executed. Without waiting for word that the draft had been paid, Murphy assigned the leases in December 1973 to Columbia. Columbia began sending the quarterly rental checks at the end of the first year as required by the leases and in 1979 assigned the leases to defendant National Fuel Gas Supply Corporation (National). National assigned its drilling rights in 1981 to Keystone Energy Corporation which, shortly thereafter, notified plaintiff that it intended to drill on her land.

Nor does plaintiff's subsequent conduct suggest that she thought that the leases were not in full force when signed. She accepted the draft, retained control of it and, when she sent it for deposit to her account in January 1974, must have considered the leases effective. Her retention of the draft after its return and her acceptance and retention of the quarterly checks for a period of seven years are not consistent with her claim that she thought the leases were not to be operative until, if ever, she cashed the draft. Moreover, from her testimony that she had been given a "bad draft" and that she did not again try to collect on it because she thought Murphy Oil was a "flaky company", it appears that her reason for assuming the leases were invalid had nothing to do with the claimed condition precedent in Hoogland's statement but related rather to her conviction that both the draft and the company that had issued it were "no good".

In sum, the actions of the parties with respect to the leases on and after their signing on November 30, 1973 compel one conclusion: that they themselves did not construe Hoogland's concededly imprecise statement as making the leases subject to a condition precedent (*see,* 22 NY Jur 2d, Contracts, § 193, for the established rule that the practical construction put upon a contract by the parties in performing under it is of great importance in determining its meaning). Indeed, as to one party, Murphy, it seems almost unthinkable that either he or his agent Hoogland, who were in the business of procuring valid leases for assignment to Murphy's customers, could have intended that the leases here, which were to be assigned in the ordinary course to Columbia, were not binding when delivered and might never become binding if plaintiff did not cash the draft. We find on the evidence that Hoogland's statement did not create such a condition and to the extent necessary to our holding herein we make such findings as the trial court could have made and as are warranted by the evidence (*see,* CPLR 5501 [c]; 5522; *Guth Realty v Gingold,* 41 AD2d 479, 482, *affd* 34 NY2d 440).

We reject plaintiff's argument, made for the first time on appeal, that the leases were not completed contracts because not signed by Hoogland as agent for Murphy. By failing to raise this issue below, plaintiff has not preserved it (*see,* CPLR 5501 [a] [3]; 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5501.11). We note that the place where Hoogland signed is one of two lines next to each other with "X" marks in front of them; plaintiff signed on the other. There is nothing to suggest that one of these two lines is for a principal's signature and one for a witness'. Murphy and plaintiff both testified that the leases had been executed by Hoogland, and all parties throughout the proceedings have treated the instruments as properly signed.

■ Accordingly, the order should be modified to provide that judgment be entered declaring that the leases are valid. It is undisputed that as of the time she commenced this action, December 15, 1981, plaintiff denied drilling access to defendant National and the assignee of its operating rights. One year and 11½ months later, on November 30, 1983, the leases expired. Trial Term found defendant's argument for extension of the terms of the leases for the amount of time that plaintiff refused access prior to expiration of the leases to be "persuasive and meritorious" but concluded that, because defendant had not raised the issue in its answer, it could only be resolved through further litigation. In the exercise of our discretion, we conclude that such equitable relief should be granted (*see,* CPLR 3017 [a];

3 Weinstein-Korn-Miller, NY Civ Prac ¶¶ 3001.18, 3017.08 [1984]). Accordingly, the declaration should provide that the terms of the leases be extended by 1 year and 11½ months, commencing with the date of the order herein.

CALLAHAN, DENMAN, BOOMER and O'DONNELL, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by Hancock, Jr., J. P.