[639 NYS2d 859]

In the Matter of PETER MONCURE et al., Respondents-Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Appellant-Respondent.

Third Department, March 14, 1996

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Kathleen Liston Morrison, Victoria A. Graffeo, Peter H. Schiff* and *James A. Sevinsky* of counsel), for appellant-respondent.

*Whiteman Osterman & Hanna,* Albany *(Jeffrey S. Baker* and *John J. Henry* of counsel), for respondents-appellants.

## OPINION OF THE COURT

WHITE, J.

In 1985, petitioner C. Powers Taylor leased two acres of the 319-acre parcel of land he owned on Overlook Mountain in the Town of Woodstock, Ulster County, to petitioner Peter Moncure for an initial term of 30 years with the option to extend for three successive terms of 30 years. As relevant here, the lease provides: "Limited Purpose. [Moncure] represents that he desires and agrees to use the Leased Property for the purposes of constructing, operating, and maintaining radio and television antennae and transmission towers, together with such structures, equipment, machinery and devices required for transmitting and receiving radio, television, and other broadcast signals".

In 1986, respondent initiated discussions with Taylor regarding the acquisition of his property which adjoins the Catskill Forest Preserve. These discussions culminated on February 6, 1990 in the execution of an "Agreement of Adjustment" wherein respondent agreed to acquire Taylor's property by eminent domain subject to Moncure's lease.[1] Respondent also agreed that all rents derived from the lease would be paid to Taylor, his heirs, successors and assigns. Thereafter, on December 27, 1990, respondent acquired the property and Taylor's reversionary interest in the leasehold property.

Sometime in February 1995, Moncure and petitioner Cellular of Upstate New York, Inc. executed an agreement granting Cellular the right to place cellular mobile radio transmitting and receiving equipment on the leasehold property. Cellular and Moncure (hereinafter collectively referred to as the applicants) applied to the Town of Woodstock Planning Board for a special use permit and site plan approval for the construction of a transmission tower. The Planning Board informed the applicants that they would have to obtain respondent's approval as the record owner of the property. In

---

1. The acquisition was also subject to the lease held by petitioner Mountain Tower, Ltd. which is not in issue on this appeal.

letters dated May 9, 1995 and May 25, 1995, respondent advised the Planning Board that it did not approve the application because, under Moncure's lease, cellular telephone facilities are not permitted on the site. Following receipt of these communications, the Planning Board adopted a resolution dismissing the application without prejudice.

Petitioners then commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking, *inter alia*, a judgment annulling respondent's May 9, 1995 and May 25, 1995 determinations and counsel fees pursuant to CPLR article 86. Supreme Court, finding respondent's determinations to be irrational, granted petitioners all the relief they sought except for counsel fees. These cross appeals ensued.

Before proceeding to the substantive issues presented by respondent's appeal, it is necessary to gain an appreciation of cellular telephone technology. Basically, cellular telephone service is based upon a system of individual cellular telephone units that have wireless radio transmission capabilities and operate within a series of geographic cells, each of which is served by a radio transmitter capable of handling hundreds of channels (*see, United States v Brady*, 13 F3d 334, 335; *MCI Cellular Tel. Co. v Federal Communications Commn.*, 738 F2d 1322, 1324). Further, the Federal Communications Commission classifies the cellular phone industry as a "radio service" (*see,* 47 CFR 22.99) and defines "cellular service" as the providing of radio telecommunication services by employing a cellular system, which is an "automated high-capacity system of one or more multichannel base stations designed to provide radio telecommunication services to mobile stations over a wide area in a spectrally efficient manner" (47 CFR 22.99).

Substantively, the resolution of respondent's appeal turns upon our interpretation of Moncure's lease. Specifically, we must determine whether the language authorizing the construction, operation and maintenance of radio and television antennae and transmission towers "for transmitting and receiving radio, television, and other broadcast signals" permits the installation of cellular telephone equipment on the leasehold property.

The cardinal rule in interpreting a lease is that the parties' intention is to be ascertained from the language employed, which, absent ambiguity, is a matter of law to be determined by the court (*see, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *New York Overnight Partners v Gordon*, 217 AD2d 20, 24-25). It is also understood that clear and unambiguous terms

should be interpreted in their plain, ordinary meaning (*see, United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232).

■ While it may not be readily apparent to a layperson, it is clear that within the communication industry it is commonly understood that a cellular telephone system is a form of radio transmission. Although the lease permits the construction of transmission towers for the transmission of radio signals, respondent nonetheless maintains that the lease does not encompass a cellular phone system. Its position is predicated on the phrase "and other broadcast signals", which it claims limits "radio" to its ordinary meaning, i.e., broadcast signals that are disseminated to the public at large rather than channeled to a specific subscriber, as are cellular telephone communications.

Aside from the fact that respondent is relying on only one of the many meanings of "broadcast",[2] we do not subscribe to its interpretation of the lease for other reasons. It is a further rule of contract construction that the words of a contract should be construed in light of the apparent object of the parties (22 NY Jur 2d, Contracts, § 197, at 40). Taking into account the potential 120-year term of the lease, it is evident that the parties intended to secure long-term stable benefits for themselves. Because even the most prescient person cannot with complete certitude foretell what the state of the communications industry and the preferred method of broadcasting signals will be in 20 years, much less in 50 or 100 years, we find that the phrase "other broadcast signals" was not intended to limit the use of the leasehold; rather, the more reasonable interpretation is that its purpose is to provide Moncure with the flexibility to adjust to evolving technological advances in the communications industry in order to insure the continued viability of the lease.

Moreover, any ambiguity in the lease is resolved by the fact that while Taylor owned the property, an advanced life system transmitter and a radio telephone system were operated from the leasehold—operations that did not involve the transmission of radio signals to the public. This practical construction put upon the lease by its signatories is strong evidence that they did not intend to limit it in the manner advocated by re-

---

2. Another accepted definition of "broadcast" is to send out radio or television signals (*see*, Webster's Third New International Dictionary 280 [unabridged 1981 ed]).

spondent (*see, Studley v National Fuel Gas Supply Corp.*, 107 AD2d 122, 128).

■ Besides the lease, respondent contends that the proposed transmission tower is precluded by NY Constitution, article XIV, § 1, which provides that "[t]he lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands". Inasmuch as respondent does not own the property covered by the leasehold, having only acquired Taylor's reversionary interest and taken the property subject to the lease, we find this constitutional provision inapplicable.

To summarize, as it is undisputed that respondent acquired Taylor's property subject to the lease which permits the transmission of radio signals and as cellular telephone transmissions are radio signals, we shall affirm Supreme Court's judgment annulling respondent's determinations and declaring that the placement of cellular telephone communications equipment is permissible under the lease.

■ Turning to petitioners' cross appeal, Supreme Court's finding that petitioners were not entitled to counsel fees under CPLR article 86, because respondent's position was "substantially justified", is entitled to deference absent an abuse of discretion (*see, Matter of New York State Clinical Lab. Assn. v Kaladjian*, 85 NY2d 346, 356). Given the broad terminology of the lease that is reasonably open to various interpretations, we perceive no abuse of discretion on Supreme Court's part. Accordingly, we shall affirm its denial of petitioners' application for counsel fees.

CARDONA, P. J., MIKOLL, CASEY and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, with costs to petitioners.