■ GOLBAR PROPERTIES, INC., et al., Respondents-Appellants, v NORTH AMERICAN MORTGAGE INVESTORS et al., Appellants-Respondents; JAMES TALCOTT, INC., Respondent, and LEE NATIONAL CORP. et al., Respondents-Appellants, et al., Defendants.—Judgment, Supreme Court, New York County, entered October 24, 1979 and amended November 15, 1979 which, *inter alia,* dismissed the claims of all plaintiffs other than Citibank, entered judgment severally against 10 defendants and in favor of Citibank and dismissed Citibank's claims against Lee National Corporation and Republic National Bank of New York and James Talcott, Inc., insofar as appealed from, affirmed, without costs or disbursements. We affirm the judgment on the comprehensive and thorough opinion of Justice Helman at Trial Term. We deem it appropriate, however, in view of the position taken by our dissenting brother, to comment briefly on the need to hold a new trial on the sole issue of the value of the Citibank mortgage on the leasehold. The claim of the defendants is that Citibank should have foreclosed on the leasehold mortgage in order to mitigate the loss incurred. The findings made at Trial Term, relevant to this issue included the fact that by the end of 1974 there were no tenants who had leased space in the premises in question; that there was a large surplus of unrented, commercial office space in New York City; and that on the foreclosure of the mortgage on the fee interest in the premises which was held in 1976 no one entered a bid except the mortgagee. In addition, no viable buyers for the premises were found. In view of these facts, the Trial Term properly concluded that there was no value to the Citibank mortgage on the leasehold. Furthermore, it is to be noted that the burden of proving that Citibank failed to mitigate or avoid damages was upon the defendants *(Cornell v T. V. Dev. Corp.,* 17 NY2d 69, 79; 13 NY Jur, Damages, § 26). In this case, the facts as found by the trial court lead readily to the conclusion that the leasehold mortgage had no value and the defendants did not sustain the burden of coming forward with proof to the contrary. Concur—Birns, J. P., Markewich and Carro, JJ.

Fein, J., dissents in part in a memorandum as follows: Tishman Realty & Construction Co., Inc. (Tishman), and all of the other plaintiffs, except Citibank, were joint venturers in a development project to erect a building at premises 1166 Avenue of the Americas (1166). Citibank made a construction loan to the developers of 1166 to remain in force only until completion of the construction. At that juncture a long-term mortgage loan would be needed to pay back the mortgagee on the construction loan. A commitment to make such a long-term mortgage loan, a so-called take-out mortgage loan commitment, was required. Since no such loan commitment was then available because no space had been leased in the premises, the developers entered into an arrangement with the defendants for a standby take-out mortgage loan commitment. This type of loan commitment affords an option to obtain a loan at a higher rate of interest upon completion of the building and upon payment of commitment fees. A standby take-out mortgage loan commitment in the total amount of $45,000,000 was obtained from 15 lenders, each committed for a specified fraction of the total loan. The security for this loan was to be a first leasehold mortgage on the premises and on leasehold interests in the underlying land. Citibank's construction loan was secured by a mortgage on the leasehold. I agree with Justice Helman and the majority that the standby take-out mortgage lenders

against whom judgment was granted (NAMI) breached their contract to make the loan and that Citibank, both as assignee of the commitment and as third-party beneficiary for whose benefit the commitment was obtained, was damaged in consequence of the breach. However, it is undisputed that Citibank failed to foreclose its mortgage on the leasehold and ultimately abandoned the mortgage and the premises. The issue, as Trial Term noted, is whether the mortgage is to be assigned zero value or whether the NAMI defendants are entitled to a reduction in the quantum of damages for which they are liable to the extent of the value of the Citibank mortgage on the leasehold. Justice Helman assigned zero value to the mortgage. In my view a new trial is required on this limited issue. In their answer, as a partial affirmative defense, the NAMI defendants pleaded that Citibank failed to mitigate damages by not foreclosing upon the leasehold mortgage when the developers' construction loan in the sum of $45,000,000 matured on December 31, 1974. It has long been the rule that where there has been a breach of contract, the party who suffers damage by reason of the breach has a duty to minimize the damages. The duty has variously been described as a duty to mitigate damages or a limitation against the injured party recovering damages for avoidable circumstances. Any award of damages should be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them. Even though a plaintiff should be made whole, he must act to avoid excessive damages. However, the burden of proof is not upon the plaintiff to prove that he acted to mitigate damages, but rather upon the party who asserts the failure to mitigate (13 NY Jur, Damages, § 26). As stated in *Hamilton v McPherson* (28 NY 72, 76-77): "The law, for wise reasons, imposes upon a party subjected to injury from a breach of contract the active duty of making reasonable exertions to render the injury as light as possible. Public interest and sound morality accord with the law in demanding this; and if the injured party, through negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him. [Citations omitted.] * * * The burden of proving that the damages which have been sustained in such cases could have been prevented, unquestionably rests upon the party guilty of the breach of contract." Although the burden of proof is on the breaching party, the obligation of the party injured is to act reasonably if it wishes to recover the entire loss *(Losei Realty Corp. v City of New York,* 254 NY 41, 47-48; *Cornell v T. V. Dev. Corp.,* 17 NY2d 69, 75; see *Den Norske Ameriekalinje Actiesselskabet v Sun Print. & Pub. Assn.,* 226 NY 1, 7). Upon the trial, Citibank sought to recover damages in the amount of $6,913,441, representing expenditures made by Citibank in the operation and management of the property for the period commencing October 31, 1974 to the date of the ultimate foreclosure of the fee mortgage. Justice Helman properly denied such recovery, stating in his opinion: "After October 31, 1974, Citibank had an opportunity to foreclose its mortgage but chose instead to pour additional funds into an empty building. This can hardly be termed an effort to mitigate damages. Indeed, the evidence showed that Citibank was persuaded to continue the operation of this completely empty building largely because Tishman was an important client of the Bank and a 'valued account'." Despite this conclusion in his opinion, Justice Helman made a finding "126. The leasehold interest in 1166 had no value on December 31, 1974 on a foreclosure sale." This finding was premised upon the testimony of two Citibank witnesses that a foreclosure sale would have brought no bids. One of the witnesses was Tishman, the developer, and the other was Robert Graham, senior vice-president of Citibank, obviously interested witnesses.

There is no evidence in the record on behalf of the NAMI defendants as to the amount which could be realized upon a foreclosure of the mortgage on the leasehold. The NAMI defendants offered as an expert witness at trial Peter Pattison, a real estate practitioner involved in the sale and rental of commercial buildings in the midtown Manhattan market as an agent for Cushman & Wakefield, and a senior vice-president of Uris Building Corporation, a major developer of commercial real estate in New York City. However, when he was asked what amount could be realized by foreclosure of the mortgage, plaintiffs objected and the trial court sustained the objection. The ground of objection does not appear. On appeal it is asserted the witness was not qualified as an expert, or was regarded as a fact witness only. The question of the qualifications of an expert witness is largely a matter of discretion for the Trial Judge, which should rarely be interfered with on appeal. Whether the Trial Justice's determination was that Pattison was not qualified as an expert to answer the question he was asked does not appear. The offer of proof was that he would have testified that "Citibank could have realized a minimum of $20,000,000 on a foreclosure in January-February 1975." It is noted that Justice Helman declined to accept plaintiffs' proposed finding Number 130 which in part stated: "Pattison was not qualified to express an opinion as to the value of the 1166 leasehold." However, Justice Helman did make a finding: "131. The NAMI defendants failed in their burden of persuading the Court that Citibank could have mitigated its $32,000,000 damages by foreclosing on the 1166 leasehold." It thus appears that on the record there is insufficient evidence to demonstrate what, if anything, the foreclosure would have brought. However, the stark fact remains that a $45,000,000 mortgage on the leasehold was abandoned. Where the party damaged by a breach holds security, the breaching party is entitled to credit for the value of the security. This record is entirely unsatisfactory on this issue. It is urged by the plaintiffs that a foreclosure would be a useless charade because (1) there was a depressed real estate market in the City of New York at the time; (2) neither Tishman nor its subagent William White was able to lease any part of 1166, although efforts had been made to do so; (3) a purchaser for the premises could not be found although intense negotiations had been conducted toward that end. It is noted that such negotiations were at prices in excess of Citibank's mortgage, hardly available as evidence that the mortgage was worth nothing. Finally, plaintiffs urge, there was a lack of buyers at the ultimate foreclosure sale on the fee, which was held more than one year later. Although such evidence may be entitled to consideration, it is plain that the record is insufficient on both sides as to the value of the mortgage on the leasehold. It may be argued that this demonstrates that the NAMI defendants have failed to meet their burden of proof and therefore are not entitled to another opportunity after so full and complete a trial, particularly in the face of what I concur is a thorough and comprehensive opinion by Justice Helman at Trial Term. However, in my view, since the record is so unsatisfactory on the issue of the value of the Citibank mortgage on the leasehold, and the reasons for the rejection of the Pattison testimony are unclear, a new trial is warranted, limited to the issue of the value of the mortgage. The NAMI defendants sufficiently met their burden on the issue of mitigation or avoidance of damages by establishing Citibank's failure to foreclose the mortgage. The equivocal circumstances which brought about such failure, coupled with the proof that the mortgage was ultimately abandoned, indicate that plaintiff failed to meet properly its ultimate burden to prove the

quantum of its damages. Accordingly, the judgment, Supreme Court, New York County, entered October 24, 1979 and amended November 15, 1979 should be modified to the extent of directing a new trial on the sole issue of the value of Citibank's mortgage on the leasehold and otherwise affirmed, without costs.