**MORGAN STANLEY HIGH YIELD SECURITIES, INC.,** Morgan Stanley Dean Witter High Income Advantage Trust, Morgan Stanley Dean Witter High Income Advantage Trust II, Morgan Stanley Dean Witter High Income Advantage Trust III, Morgan Stanley Variable Investment Series, Morgan Stanley Diversified Income Trust, and Morgan Stanley Select Dimensions Investment Series, Plaintiffs,

v.

**SEVEN CIRCLE GAMING CORPORATION** f/k/a Swiss Casinos of America, Inc. Defendant.

No. 01 CIV. 7266(RMB)(TH).

United States District Court, S.D. New York.

March 18, 2003.

Jean–Marie Lucien Atamian, Mayer Brown Rowe & Maw, New York, NY.

Richard A. Lafont, Mayer, Brown, Rowe & Maw, New York, NY.

Lisa Ellen Brody, Kleinbard, Bell & Brecker, L.L.P., Philadelphia, PA.

## *ORDER*

BERMAN, District Judge.

### I. Background

On March 5, 2002, plaintiffs, who are seven high-yield mutual debt funds (collectively, "Morgan Stanley" or "Plaintiffs"), filed this action against Seven Circle Gaming Corporation, formerly known as Swiss Casinos of America, Inc. ("Defendant" or "Swiss Casinos"). Plaintiffs contend that Defendant breached a Note Purchase Agreement, dated August 1, 2001 ("Agreement"), pursuant to which Defendant agreed to purchase certain notes and warrants from Morgan Stanley. On April 15, 2002, Plaintiffs filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the Agreement was a legally binding contract, that Defendant breached, and that Plaintiffs were entitled to specific performance, i.e. payment of the negotiated purchase price of $29,678,269. On May 17, 2002, Defendant filed its opposition to Plaintiffs' motion arguing, *inter alia*, that the Agreement was subject to a condition precedent; that money damages and not specific performance was the appropriate remedy; and that any award of damages to Plaintiffs should be reduced because of Plaintiffs' failure to mitigate.

On February 25, 2003, Magistrate Judge Theodore H. Katz, to whom this matter had been referred, issued a comprehensive and thoughtful report and recommendation ("Report"), recommending that Plaintiffs' motion be granted as to liability and denied as to damages. Report at 2. Magistrate Katz stated that "because Plaintiffs have an adequate remedy at law, specific performance is not appropriate." Report at 31. Magistrate Katz also determined that the question of whether Plaintiffs attempted to mitigate their damages could not be determined on summary judgment. Report at 32 ("Whether Plaintiffs unreasonably failed to attempt to sell the Notes and Warrants, and what price could have been secured for the Notes and Warrants at the relevant time, are questions of fact that cannot be resolved on summary judgment.").

Defendants filed objections to the Report on or about March 12, 2003. Plaintiffs have not submitted objections **For the reasons set forth below, the Report is adopted in its entirety.**

### II. Standard of Review

A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [Magistrate Judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United*

*States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

## III. Analysis

The Court has conducted a *de novo* review of the record herein, including, among other things the Report, the record, applicable legal authorities, and Defendant's objections.[1] None of the objections provide a basis for departing from the Report. The Court concludes that Magistrate Katz' factual and legal determinations are supported by the record and the law in all material respects.[2]

In particular, the Court finds that Magistrate Katz correctly determined that the parole evidence offered by Defendant, i.e. the existence of an oral condition precedent, contradicted the express terms of the Agreement. *See, e.g., Bank Leumi Trust Co. v. Wulkan,* 735 F.Supp. 72, 76 (S.D.N.Y.1990) ("Wulkans contention that Bank Leumi orally agreed that the effectiveness of the Guaranty was conditioned upon Wulkan obtaining the requisite authority from the Israeli government obviously varies the express written terms of the Guaranty, which states that he 'irrevocably and unconditionally' undertook to guarantee Dumax's liabilities to Bank Leumi, and that 'no modifications or amendment of the guaranty shall be deemed to be made unless the same shall be in writing.' "); *Meadow Brook National Bank v. Bzura,* 20 A.D.2d 287, 246 N.Y.S.2d 787 (1st Dep't 1964) ("The alleged oral condition precedent asserted in this case . . . contradicts the description of the guarantor's obligation as unconditional.")

## IV. Conclusion and Order

For the reasons stated herein and therein, the Court adopts Magistrate Judge Katz' Report in its entirety and grants Plaintiffs' motion for summary judgment [19] in part (as to liability) and denies it in part (as to damages).

The parties (principals and counsel) are directed to participate in a settlement and status conference with the Court on April 7, 2003 at 10:00 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. **The parties are directed to engage in good faith settlement negotiations prior to the conference.**

## REPORT AND RECOMMENDATION

KATZ, United States Magistrate Judge.

Plaintiffs (collectively, "Morgan Stanley" or "Plaintiffs"), bring this action against Seven Circle Gaming Corp. f/k/a Swiss Casinos of America ("Swiss Casinos" or "Defendant"). Plaintiffs allege breach of contract by Defendant in connection with a Note Purchase Agreement ("the Agreement") executed by the parties, in which Defendant allegedly agreed, but later refused, to purchase from Plaintiffs notes and warrants ("the Notes and Warrants") issued by The Resort at Summerlin, Inc., for $29,678,269.00 ("the Purchase Price").

Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that, as a matter of law, the Agreement was a legally binding contract that Defendant breached. Plaintiffs additionally contend that they are entitled to specific performance, namely, delivery by Defendant of

---

1. The facts set forth in the Report are incorporated herein by reference.

2. As to any portion of the Report to which no objections have been made, the Court concludes that the Report is not (clearly) erroneous. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). And, any objections not specifically discussed in this Order were considered and rejected.

the Purchase Price. Defendant opposes the motion, arguing that the Agreement never became effective because it was subject to an oral condition precedent that was not satisfied. Furthermore, Defendant claims that Plaintiffs are estopped from denying the existence of a condition precedent. Defendant contends that even if this Court grants summary judgment as to liability, Plaintiffs have failed to satisfy the elements required for specific performance, and that money damages are the appropriate remedy. Defendant further contends that, if it is found to be in breach, Plaintiffs' damages should be reduced because they failed to mitigate their damages.

Plaintiffs' motion for summary judgment has been referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil Rules of the Southern District of New York. For the reasons set forth below, this Court respectfully recommends that Plaintiffs' motion for summary judgment be granted as to liability and denied as to damages.

## BACKGROUND

Plaintiffs are seven high-yield debt mutual funds. Defendant is a wholly-owned subsidiary of Swiss Leisure Group ("Swiss Parent"). *See* Deposition of John Tipton ("Tipton Dep.") at 20. The Swiss Parent is principally owned by J.P.C. Holding, which, in turn, is principally owned by Hans Jecklin. *Id.* at 19. Jecklin, his wife, and John Tipton ("Tipton"), constitute Defendant's board of directors. *Id.* at 19–20. The Notes and Warrants were issued by The Resort at Summerlin, Inc., a wholly-owned subsidiary of Defendant, *Id.* at 11, and The Resort at Summerlin, L.P., a partnership in which Defendant had a one percent interest in the general partnership and approximately a 70 percent interest in

the limited partnership. *Id.* at 11–12. The Notes and Warrants were issued to fund construction of an "off the strip" golf resort, spa, and casino in Las Vegas, Nevada.

In or around 1997, Morgan Stanley acquired the Notes and Warrants for approximately $39 million. *See* Deposition of Peter Avelar ("Avelar Dep.") at 23. Plaintiffs subsequently decided to attempt to sell their Notes and Warrants to Defendant. *See id.* at 29–31. Plaintiffs' principal negotiator was Matthew Shulkin ("Shulkin"), a junior analyst at Morgan Stanley. *See* Deposition of Matthew Shulkin ("Shulkin Dep.") at 36. Peter Avelar ("Avelar"), a portfolio manager and Shulkin's supervisor, reviewed and executed the agreement. *See* Avelar Dep. at 42–44. Tipton negotiated on behalf of Defendant. *See* Affidavit of John Tipton, appended to Affidavit of Eric J. Schreiner ("Tipton Aff.") ¶ 2; Tipton Dep. at 111.

After protracted negotiations, a contract was drafted by the parties over a period of several months. In June 2000, Shulkin and Tipton began the negotiations. *See* Tipton Dep. at 111; Shulkin Dep. at 36. Defendant contends that, from the outset of the discussions, Tipton advised Shulkin that Defendant's purchase of the Notes and Warrants was conditioned on its obtaining funding from an outside investor. *See* Tipton Dep. at 92. Indeed, according to Defendant, Tipton repeatedly advised Shulkin that Defendant was looking for outside investors, and he specifically told Shulkin of an investor with whom Defendant was negotiating to obtain funding— Gerd Schulte ("Schulte"). *See* Tipton Aff. ¶ 6. Defendant contends that Plaintiffs understood that the agreement was conditioned upon Defendant finding outside funding, and that they raised no objection. *See* Tipton Aff. ¶ 8.

By e-mail dated June 16, 2000, Tipton sent Plaintiffs' counsel the "proposed Bond Purchase Agreement [they had] discussed," which proposed a closing date of July 31, 2000, and a purchase price of $.74 per bond, for a total price of $ 28,863,700.00. *See* Bond Purchase Agreement, dated June 16, 2000 ("June 16, 2000 Draft"), appended to Pls.' Notice of Motion, Ex. F. According to Defendant, this proposed closing date was tenable because the Swiss Parent had a tentative agreement to secure funding before the closing date. *See* Tipton Dep. at 113. The "proposed Bond Purchase Agreement" did not contain any language conditioning payment of the purchase price on Defendant's ability to secure third-party financing. *See* June 16, 2000 Draft.

A second draft was circulated among the parties on or about June 30, 2000. *See* Note Purchase Agreement, dated June 30, 2000, Pls.' Notice of Motion, Ex. G. This draft was substantially similar to the first, although it was now captioned "Note Purchase Agreement," and the "$0.74 per bond" language had been excised, but the total purchase price remained the same. *See id.;* Tipton Dep. at 124. A third draft was circulated by Plaintiff's counsel to Tipton, by e-mail, on July 17, 2000, which was nearly identical to the June 30, 2000 version, except that the proposed purchaser was now identified as "Swiss Casinos AG." *See* Note Purchase Agreement, dated July 17, 2000, Pls.' Notice of Motion, Ex. H. Neither draft contained any funding contingency language.

The third draft was never executed because Defendant was unable to close by July 31, 2000. *See* Tipton Dep. at 132. Defendant contends that Tipton spoke with Shulkin and told him that Schulte had not yet committed to funding the purchase of the Notes and Warrants, and thus Defendant would be unable to close by the proposed date. *See id.* at 93, 113, 132; Tipton Aff. ¶ 10. According to Defendant, Tipton advised Shulkin that Schulte was slow in making decisions, but that he had offered to fly Shulkin and Avelar to Switzerland to demonstrate that he had the financial capacity to fund the purchase of the Notes and Warrants if a deal with Defendant could be structured. According to Defendant, Shulkin declined the invitation, *see* Tipton Aff. ¶ 10; Tipton Dep. at 93, 113, but Shulkin claims to have no recollection of such an offer. *See* Shulkin Dep. at 128.

Nonetheless, both parties remained interested in arranging the purchase of the Notes and Warrants, although Defendant claims that its interest remained contingent on it obtaining funding from Schulte. *See* Tipton Aff. ¶ 11; Tipton Dep. at 134. Discussions between the parties continued, and Tipton and Shulkin agreed upon a new closing date of August 31, 2000, and, in exchange for Plaintiff's forbearance, the purchase price was increased from $0.74 to $0.76 per bond. *See* Tipton Dep. at 134–35. Defendant claims that the closing date was moved specifically in response to its request for additional time to attempt to obtain financing from Schulte, and that Shulkin understood that Defendant was still negotiating with Schulte to procure funding. *See id.* at 137; Tipton Aff. ¶ 12.

On August 1, 2000, the parties signed the Agreement, which set a new closing date of August 31, 2000, reflected a revised purchase price of $29,678,269.00, and identified Defendant as the purchaser. *See* Agreement, Pls.' Notice of Motion, Ex. A. Like the earlier drafts, the final Agreement contained no language conditioning payment of the Purchase Price on Defendant's ability to secure outside funding. *See id.*

Defendant contends that, because a deal with Schulte could not be finalized, and

because Defendant was unable to otherwise obtain funding for the sale, Tipton informed Shulkin about one week before the Closing Date that Defendant could not complete the purchase of the Notes and Warrants.[1] *See* Tipton Aff. ¶ 16; Tipton Dep. at 103–04.

However, according to Plaintiffs, on August 31, 2000, Morgan Stanley's custodian of the Notes and Warrants—the Bank of New York—delivered the Notes and Warrants to Salomon Smith Barney ("Salomon"), Defendant's designated broker-dealer, for the purpose of taking delivery of the Notes and Warrants and effecting payment of the Purchase Price. *See* Tipton Dep. at 150; Deposition of James Ervin ("Ervin Dep.") at 50–51. Plaintiffs further contend that Salomon in turn transferred $29,678,269.00, the Purchase Price, on behalf of Defendant, to the Bank of New York, only to subsequently reverse settlement of the trade and return the Notes and Warrants to Plaintiffs. *See* Ervin Dep. at 50–52. According to Plaintiffs, as a result of the reversal, Bank of New York was compelled to return the previously transferred funds to Salomon. *Id.* at 51–52.

By letter, dated September 11, 2000, Plaintiffs notified Defendant of their belief that Defendant had defaulted on the Agreement, and they demanded payment of the Purchase Price by September 18, 2000. *See* Letter of Sept. 11, 2000, from Nakim Zilkha, appended to Complaint, Ex. B. The demand letter further stated that Plaintiffs remained ready, willing, and able to perform their obligations under the Agreement. *Id.* Defendant never responded to the letter. *See* Tipton Dep. at 160–61.

On or about November 21, 2000, the Resort at Summerlin filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of Nevada. *See* Complaint ¶ 13; Answer ¶ 13.

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56(c), Fed.R.Civ.P., a motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 285–86 (2d Cir.2002). The moving party must show that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553–54; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Marvel Characters,* 310 F.3d at 286.

In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir.2000).

On a motion for summary judgment, a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975); *see also Howley,* 217 F.3d at 150;

---

1. Plaintiffs neither confirm nor deny that Shulkin or any other Morgan Stanley employee received notice from Tipton that Defendant would be unable to complete the purchase.

*Flaherty v. Lang,* 199 F.3d 607, 615 (2d Cir.1999). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995). However, "summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149 (2d Cir.1998)(quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552)(internal citations omitted). "[I]n order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor," and "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001)(internal quotation marks omitted).

## II. Plaintiffs' Claim

Plaintiffs claim that the Agreement between the parties was unambiguous, and that by failing to execute the purchase of the Notes and Warrants, Defendant breached the Agreement and should be held liable as a matter of law. As set forth in the Agreement, New York law controls in this action. *See* Agreement ¶ 3. In order to recover for breach of contract, Plaintiffs must prove 1) the existence of a valid contract, 2) their performance under the contract, 3) Defendant's breach of that contract, and 4) damage caused by the breach. *See Primetime 24 Joint Venture v. Echostar Communications Corp.,* No. 98 Civ. 6738(RMB)(MHD), 2002 WL 44133, at *4 (S.D.N.Y. Jan. 11, 2002)(citing *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522,

525 (2d Cir.1994)). Only the first of these requirements is in serious dispute.

Defendant contends that the Agreement was subject to a condition precedent which was never satisfied, and therefore the Agreement never became legally binding. Defendant seeks to demonstrate the existence of the condition precedent by presenting evidence of an alleged oral understanding between Tipton and Shulkin that the Agreement would only become effective if Defendant was able to secure funding from Schulte.

Plaintiffs deny that there was a condition precedent and contend that evidence of such a condition, which is outside the four corners of the written Agreement, may not be considered by this Court. Plaintiffs maintain that the parol evidence rule, which serves to bar the introduction of evidence pertaining to terms in a prior oral agreement that would vary the terms of a written contract, applies here.

## A. The Parol Evidence Rule

■ The parol evidence rule does not apply to all contracts. In order to establish that the parol evidence rule applies to a particular contract, the party opposing the admission of parol evidence must demonstrate that 1) the final, written, contract is an integrated agreement, 2) the language of the written contract is clear and unambiguous, and 3) there has been a breach of the contract. *See Investors Ins. Co. v. Dorinco Reinsurance Co.,* 917 F.2d 100, 103–05 (2d Cir.1990); *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.,* 111 F.Supp.2d 450, 454 (S.D.N.Y. 2000). If the party seeking to exclude parol evidence cannot satisfy these criteria, then the parol evidence rule "has no application and proof of the oral contract may be admitted." *Lee v. Joseph E. Seagram & Sons, Inc.,* 413 F.Supp. 693, 701–

02 (S.D.N.Y.1976)(citing *Fogelson v. Rackfay Construction Co.*, 300.N.Y. 334, 338, 90 N.E.2d 881 (1950)); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir.1999)("When an agreement is not integrated, the parol evidence rule does not apply and extrinsic evidence of a separate oral agreement can be considered."). However, if these conditions can be demonstrated, the parol evidence rule applies to the contract in question.

### 1. Integration

■ The first step in the application of the parol evidence rule is to determine whether the contract is integrated. "[A]n integrated agreement is one which represents the entire understanding of the parties to the transaction. Under New York law a contract which appears complete on its face is an integrated agreement as a matter of law." *Wayland Inv. Fund*, 111 F.Supp.2d at 454 (citing, *inter alia, Investors Ins. Co.*, 917 F.2d at 104; *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 n. 3 (2d Cir.1975))(internal quotation marks omitted). "If the written document 'appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement then it constitutes the contract between them, and is presumed to contain the whole of that contract.'" *Municipal Capital Appreciation Partners, I, L.P. v. Page*, 181 F.Supp.2d 379, 392 (S.D.N.Y.2002)(quoting *Wayland Inv. Fund*, 111 F.Supp.2d at 454) (in turn quoting *Eighmie v. Taylor*, 98 N.Y. 288, 1885 WL 10558 (1885)).

■ Where, as here, the contract lacks an express integration clause,[2] a court must determine whether the parties intended the agreement to be integrated "by reading the writing in light of the surrounding circumstances." *Starter Corp.*, 170 F.3d at 295 (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir.1995)). Factors New York courts consider in making this determination include

whether the document in question refers to the oral agreement, or whether the alleged oral agreement between the parties is the sort of complex arrangement which is customarily reduced to writing; whether the parties were represented by experienced counsel when they entered into the agreement; whether the parties and their counsel negotiated during a lengthy period, resulting in a specially drawn out and executed agreement, and whether the condition at issue is fundamental; if the contract, which does not include the standard integration clause, nonetheless contains wording like "in consideration of the mutual promises herein contained, it is agreed and covenanted as follows," and ends by stating that "the foregoing correctly sets forth your understanding of our Agreement."

*Adler & Shaykin v. Wachner*, 721 F.Supp. 472, 477 (S.D.N.Y.1988) (internal quotation marks and punctuation omitted)(citing, respectively, *Manufacturers Hanover Trust Company v. Margolis*, 115 A.D.2d 406, 407–8, 496 N.Y.S.2d 36, 37 (1st Dep't 1985); *Pecorella v. Greater Buffalo Press, Inc.*, 84 A.D.2d 950, 446 N.Y.S.2d 709, 709–10 (4th Dep't 1981); *Braten*, 60 N.Y.2d at 162, 468 N.Y.S.2d at 864, 456 N.E.2d 802; *Lee*, 413 F.Supp. at 701).

**2.** Defendant's assertion, that the absence of an integration clause leads to the conclusion that the parties must not have intended the Agreement to contain the whole of their agreement, is meritless. A contract need not contain an integration clause in order to be considered an integrated agreement. *See Starter Corp.*, 170 F.3d at 295; *Bourne v. Walt Disney Co.*, 68 F.3d 621, 627 (2d Cir.1995); *Braten v. Bankers Trust Co.*, 60 N.Y.2d 155, 162, 468 N.Y.S.2d 861, 864, 456 N.E.2d 802 (1983).

■ The Agreement appears to be complete on its face. It specifies the identity of the parties, what was to be sold, how the sale was to occur, when the sale was to take place, and the purchase price. *See* Agreement. No contingency was included in the Agreement, and it is difficult to believe that a term so crucial to the enforceability of a contract, such as a funding contingency, would not ordinarily be included in a contract imposing approximately $30 million of liability on a party. Indeed, Tipton conceded at his deposition that he had included language regarding such contingencies in other agreements that he had drafted. *See* Tipton Dep. at 147–48.

Additionally, there is no question that Defendant was represented by experienced counsel in drafting the Agreement; Tipton had been practicing as a transactional attorney for over 25 years. *See id.* at 33. Furthermore, this was not a hastily drafted document; the Agreement had undergone three drafts and had been negotiated over a period of almost three months. Finally, the Agreement contains a clause warranting that "[e]ach party represents and warrants to the other that this Agreement is its legal, valid and binding obligation enforceable against it in accordance with its terms," *see* Agreement ¶ 3, language strikingly similar to that which the courts have indicated lead to a finding of integration. *See Adler & Shaykin,* 721 F.Supp. at 477; *Braten,* 60 N.Y.2d at 162, 468 N.Y.S.2d at 864, 456 N.E.2d 802; *Lee,* 413 F.Supp. at 701.

Accordingly, the Court finds that the Agreement is integrated.

### 2. The Agreement is Clear and Unambiguous

The second step is to determine whether any of the terms in the Agreement are unclear or ambiguous. Defendant has not claimed that the Agreement is unclear or ambiguous, and the Court agrees with Defendant's admission that the Agreement "is a document that speaks for itself." Answer ¶¶ 1, 17, 18, 19, 20.

### 3. Breach

The third step, determining whether Defendant breached the Agreement, requires somewhat circular logic in the context of this case. Defendant seeks to invoke parol evidence to demonstrate that the Agreement never became a legally effective document. In order to determine whether the parol evidence rule is operative, however, the Court must first determine whether a breach occurred. Defendant does not dispute that it did not deliver the Purchase Price on the Closing Date. *See* Def.'s Mem. at 5–6. It therefore is reasonable to conclude that *if* the Agreement is found to be a legally operative contract, then Defendant was clearly in breach. Therefore, Plaintiffs have satisfied the criteria necessary to apply the parol evidence rule to the Agreement.

### B. Application of the Parol Evidence Rule in this Case

Having established that the parol evidence rule applies to the Agreement, the Court is left to consider whether the rule bars the admission of the evidence proffered by Defendant to establish that the Agreement was subject to a condition precedent. In addressing this question, the parties propose two different legal models, each with a distinct body of case law to support it. Plaintiffs, relying on *Mitchill v. Lath,* 247 N.Y. 377, 381, 160 N.E. 646 (1928), contend that the parol evidence rule bars the introduction of any evidence that would vary the terms of the Agreement. Defendant, in contrast, relies on *Hicks v. Bush,* 10 N.Y.2d 488, 225 N.Y.S.2d 34, 180 N.E.2d 425 (1962), for the

proposition that the evidence is admissible because, rather than varying the terms included in the presumably final written Agreement, the condition precedent that Defendant seeks to establish would negate the effectiveness of the contract as a whole.

Though some confusion between the two bodies of case law is understandable, *Mitchill* and *Hicks,* and their respective progeny, clearly address two different scenarios. *Mitchill* essentially defines the contours of the parol evidence rule, and controls only where "two entirely different contracts" exist, 247 N.Y. at 380, 160 N.E. 646, and a party seeks to introduce the terms of a prior, separate, agreement in order to vary the terms of a final, written, contract. Pursuant to *Mitchill,* a separate agreement extrinsic to a written contract is admissible only if 1) the agreement is collateral to the principal written contract, 2) it does not contradict express or implied provisions of the written contract, and 3) it does not contain terms that "parties would not ordinarily be expected to embody in the writing." *See id.* at 381, 160 N.E. 646.

Defendant, however, is not attempting to introduce a separate contract that would vary the terms of the Agreement. Instead, Defendant seeks to establish the existence of a condition precedent, which, rather than varying the terms of the written contract, would establish that the contract, absent the occurrence of the orally established condition, never became effective at all. *See, e.g., Kirtley v. Abrams,* 299 F.2d 341, 345 (2d Cir.1962) ("The basic distinction, in New York as in many other jurisdictions, is ... 'that evidence to vary the terms of an agreement in writing is not admissible, but evidence to shew [sic] that there is not an agreement at all is admissible.)' " (quoting *Pym v. Campbell,* 119 Eng. Rep. 903, 905 (Q.B.1856)); *Amirana v. Howland,* 202 A.D.2d 783, 784, 609 N.Y.S.2d 96, 98 (3d Dep't 1994)("the purpose of the parol evidence [to demonstrate a condition precedent] is to establish that the note never became legally effective"); *Daley v. Related Cos.,* 198 A.D.2d 118, 603 N.Y.S.2d 160, 160–61 (1st Dep't 1993)(condition precedent negates enforceability of agreement as a whole); *Studley v. National Fuel Gas Supply Corp.,* 107 A.D.2d 122, 125, 485 N.Y.S.2d 880, 883 (4th Dep't 1985)("The purpose of [condition precedent] evidence is not to vary the agreement but to establish that it never became legally effective"). The admissibility of oral testimony establishing a condition precedent to an otherwise integrated agreement is regarded as an exception to the parol evidence rule. *See VJK Prods., Inc. v. Friedman/Meyer Prods., Inc.,* 565 F.Supp. 916, 919 (S.D.N.Y.1983)(citing, *inter alia, Hicks,* 10 N.Y.2d at 491, 225 N.Y.S.2d at 37, 180 N.E.2d 425).

■ The standard in New York for admitting evidence of an oral condition precedent was established in *Hicks.* In that case, the New York Court of Appeals explained,

> The applicable law is clear, the relevant principles settled. Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement if the condition does not contradict the express terms of such written agreement.

10 N.Y.2d at 491, 225 N.Y.S.2d at 37, 180 N.E.2d 425. *See also Mizuna, Ltd. v. Crossland Fed. Sav. Bank,* 90 F.3d 650, 659 (2d Cir.1996); *Lee v. Joseph E. Seagram & Sons, Inc.,* 552 F.2d 447, 452 (2d Cir.1977); *Amirana,* 202 A.D.2d at 784, 609 N.Y.S.2d at 98; *Studley,* 107 A.D.2d at 125, 485 N.Y.S.2d at 883; *Hunt Foods & Ind. v. Doliner,* 26 A.D.2d 41, 43, 270 N.Y.S.2d 937, 940 (1st Dep't 1966).

Whether an alleged oral condition precedent contradicts the terms of a writing,

however, is not always clear, as "the line between consistent and inconsistent conditions precedent may be a fine one." *Intercontinental Monetary Corp. v. Performance Guarantees, Inc.*, 705 F.Supp. 144, 149–50 (S.D.N.Y.1989). As the court noted in *Hicks,*

> A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence does not bar proof of every orally established condition precedent, but only of those which *in a real sense* contradict the terms of the written agreement.

10 N.Y.2d at 491, 225 N.Y.S.2d 34, 180 N.E.2d 425 (emphasis supplied); *see also Hunt Foods*, 26 A.D.2d at 43, 270 N.Y.S.2d at 940 ("In a sense any oral provision which would prevent the ripening of the obligations of a writing is inconsistent with a writing. But that is obviously not the sense in which the word is used. To be inconsistent the term must contradict or negate a term of the writing.")(internal citation omitted).

The Court notes that the Agreement contains no language regarding the existence or nonexistence of any funding contingency arrangements. Courts have held that where a written contract contains no express language as to the existence of a condition, such as a funding contingency, there is no inherent contradiction between the condition and the written agreement generally. *See, e.g., id.* at 490, 225 N.Y.S.2d at 37 (parol evidence admissible to demonstrate oral funding contingency; no contradiction with writing because funding condition was a matter on which the written agreement was silent); *Amirana*, 202 A.D.2d at 784, 609 N.Y.S.2d at 98 (where written contract had no provision concerning funding contingency, oral evidence thereof did not contradict express terms of contract); *Key Bank of Southeastern N.Y. v. Strober Bros.*, 136 A.D.2d 604, 607–08, 523 N.Y.S.2d 855, 858 (2d Dep't 1988)(alleged oral condition precedent concerning stopped payment of check in loan guarantee admissible when there was no mention of existence or nonexistence of condition in written contract); *Spina v. Ferentino*, 30 A.D.2d 1035, 294 N.Y.S.2d 721, 722 (4th Dep't 1968)(alleged oral condition precedent regarding funding contingency admissible; no contradiction because written contract contained no language regarding funding contingencies). Thus, there is no obvious contradiction between the alleged condition precedent and the Agreement as a whole.

Nonetheless, Plaintiffs contend that the oral funding contingency alleged by Defendant contradicts a number of explicit provisions in the Agreement. Specifically, Plaintiffs identify three clauses which, they claim, would be directly contradicted by any alleged funding contingency agreement. First, Plaintiffs point out that in Section 2, Defendant undertook to purchase the Notes and Warrants on the closing date "in immediately available funds." Pls.' Mem. at 19. Plaintiffs contend that the existence of the phrase "immediately available funds" cannot be reconciled with any purported funding contingency. Second, Plaintiffs contend that the statement in Section 3 that "[t]ime is of the essence" underlines the unconditional and time-sensitive nature of the parties' obligations, and cannot coexist with any conditions regarding funding. *Id.* Third, Plaintiffs contend that Section 3's covenant that "each party represents and warrants to the other that the Agreement is its legal, valid and binding obligation enforceable against it in accordance with its terms" is irreconcilable with an agreement that Defendant's obligations were to depend on the availability of procuring funding. *Id.*

Unsurprisingly, Defendant has a different view of how these clauses should be construed. Defendant contends that the requirement that the purchase be made in "immediately available funds" is not only consistent with a contingency agreement, but actually supports its allegation that the contract could only become effective if Defendant could obtain immediately available funds. Defendant also suggests that the "time is of the essence" provision in no way contradicts the existence of a funding contingency. Finally, Defendant characterizes the provision that "each party represents and warrants to the other that the Agreement is its legal, valid and binding obligation enforceable against it in accordance with its terms," as boilerplate contractual language fully consistent with the alleged condition precedent.

### 1. The "Immediately Available Funds" Clause

■ Plaintiffs' contention that the alleged condition precedent would contradict the clause in the Agreement requiring that, in order to close the sale, Defendant "shall direct in writing not later than two days before the Closing Date against receipt in immediately available funds of the Purchase Price," *see* Agreement ¶, is unpersuasive. The term clearly refers to the method of payment, rather than indicating any unconditional promise to pay. Indeed, Plaintiffs appear to concede this point in their Reply Brief, in which they contend that the requirement that payment be delivered in "immediately available funds" requires the Purchase Price to be tendered in a form that could be immediately withdrawn. *See* Pls.' Reply at 7–8 (citing *S.E.C. v. Miller,* 495 F.Supp. 465, 469, n. 14 (S.D.N.Y.1980)).[3]

---

**3.** The Court finds equally unpersuasive Defendant's contention that the clause requiring payment in "immediately available funds" implied a contingency that the Agreement was

### 2. The "Time is of the Essence" Clause

■ Plaintiffs second contention, that the condition precedent would conflict with the "time is of the essence" clause, is similarly unavailing. According to Plaintiffs, the existence of the clause "strongly suggest[s] that the parties did not anticipate any delays in performance." Pls.' Mem. at 19. Plaintiffs' position would have merit if the Agreement was indeed determined to be effective, but it begs the question in determining whether a contradiction exists between the alleged condition precedent and the term in question here. The provision simply assures—assuming there is a valid contract—that the parties will discharge their responsibilities promptly. The Court finds that the alleged condition precedent does not "in a real sense contradict[s] [this] ter[m] of the written agreement." *See Hicks,* 10 N.Y.2d at 491, 225 N.Y.S.2d 34, 180 N.E.2d 425.

### 3. The Enforceability Clause

■ Plaintiffs' third purported contradiction poses the most difficult question of interpretation. The Agreement contains a provision stating that "each party represents and warrants to the other that this Agreement is its legal, valid and binding obligation enforceable against it in accordance with its terms." Agreement ¶ 3.

A consideration of whether the alleged condition precedent would contradict this term reveals the often confounding nature of the doctrine relating to conditions precedent, which was sardonically described by Chief Judge Breitel in his dissent in *Long Island Trust Company v. Int'l Inst. for Packaging Educ., Ltd., et al.,* in which

only to become effective if the funds became "available." The Court construes the clause as referring solely to the method of payment.

he attempted to make sense of the pertinent law:

> The ultimate principle is a simple one, namely that an integrated written obligation may not be avoided by the tender of parol, usually oral, evidence which contradicts or varies the written obligation. The great and hoary exception is that a party is always free to establish by parol evidence that the written undertaking by which he is apparently bound, never came into existence because of an agreed precondition that it not take effect unless and until the extraneous precondition has come to pass. The great and hoary exception has its own exception, namely, that it is inapplicable if the proffered parol evidence itself contradicts or varies the terms of the written undertaking sought to be avoided.

38 N.Y.2d 493, 498, 381 N.Y.S.2d 445, 344 N.E.2d 377 (1976).

In order to determine whether a contradiction exists, courts frequently engage in almost Talmudic analyses of the compatibility of seemingly inconsistent provisions. True to this task, this Court has painstakingly endeavored to determine whether the alleged condition precedent conflicts with the term in question here. Lamentably, an examination of the case law on the subject only renders the Court's task more daunting, as no case that the Court has located deals with the precise language at issue here. However, an examination of analogous decisions does provide some guidance.

Where a contract explicitly states that a party's obligations are "unconditional," or where a release or waiver provision bars the assertion of defenses or counterclaims, courts have generally found that any condition precedent is inherently in conflict with such a provision. *See, e.g., Bank Leumi Trust Co. of New York v. Wulkan,*

735 F.Supp. 72, 76 (S.D.N.Y.1990)(alleged oral condition precedent inconsistent with express written term in guaranty stating that defendant "irrevocably and unconditionally" undertook to guarantee plaintiff's liabilities); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 828, 427 N.Y.S.2d 782, 783, 404 N.E.2d 1323 (1980)(alleged oral condition precedent inconsistent with clause in contract waiving "the right to interpose any defense, set-off or counterclaim whatsoever"); *Mastan Co. v. Weil,* 84 A.D.2d 657, 658, 444 N.Y.S.2d 315, 317 (3d Dep't 1981)(alleged oral condition precedent inconsistent with explicit language providing unconditional and irrevocable guarantee of payment); *Wurlitzer Co. v. Playtime Distribs., Inc.,* 58 A.D.2d 684, 395 N.Y.S.2d 267, 268 (3d Dep't 1977)(alleged oral condition precedent inconsistent with clause providing that defendants "unconditionally guarantee ... that all sums payable on said note shall be promptly paid in full"); *Meadow Brook Nat'l Bank v. Bzura,* 20 A.D.2d 287, 290, 246 N.Y.S.2d 787, 790 (1st Dep't 1964)(clause in guaranty, that guarantor "unconditionally guarantees to the Bank the payment of indebtedness incurred by company," was inconsistent with alleged oral condition precedent).

Similarly, where a contract contains explicit language requiring that any additional terms or modifications of the contract must be in writing, courts have generally held that there is a conflict between the clause and any alleged oral conditions precedent. *See, e.g., Mizuna,* 90 F.3d at 659–60 (alleged oral condition precedent inconsistent with clause prohibiting amendment or discharge of contract "except by agreement in writing"); *Bank Leumi Trust Co.,* 735 F.Supp. at 76 (alleged oral condition precedent inconsistent with provision in guaranty that "no modifications or amendment ... shall be deemed to be made unless the same shall be in writing");

*Hicks*, 10 N.Y.2d at 492, 225 N.Y.S.2d at 37, 180 N.E.2d 425 (parol evidence to show contemporaneous oral agreement inadmissible because it contradicted "explicit notation that no oral arrangement or modification was to be binding upon the parties"); *Flacke v. Salem Hills Sewage Disposal Corp.*, 91 A.D.2d 739, 740, 457 N.Y.S.2d 992, 994 (3d Dep't 1982)(holding that clause providing for procedure for seeking relief or change by application to plaintiff in writing was contradicted by alleged oral funding contingency agreement); *Chemical Bank v. Nattin Realty, Inc.*, 61 A.D.2d 921, 403 N.Y.S.2d 6 (1st Dep't 1978)(alleged oral condition precedent inconsistent with terms ensuring "no executory agreement unless in writing and signed by Bank" and "no course of dealings" between parties could vitiate effectiveness of contract); *but see Tropical Leasing, Inc. v. Fiermonte Chevrolet, Inc.*, 80 A.D.2d 467, 469, 439 N.Y.S.2d 566, 568 (4th Dep't 1981)(parol evidence of condition precedent did not contradict written merger clause, which "provided that the written document embodies the agreement of the parties," because term "has no significance until there is a contract"); *Procopis v. G.P.P. Rests.*, 43 A.D.2d 974, 975, 352 N.Y.S.2d 230, 232 (2d Dep't 1974) (evidence of condition precedent did not contradict term in writing that document "embodies the agreement of the parties and may not be changed or terminated orally"; "[the term] has no significance until there is a contract.").

It is clear that any provision in a contract characterizing a party's obligations as "unconditional" would be directly contradicted by any condition, whether established orally or otherwise. Similarly, it is generally accepted that any provision in a contract expressly requiring modifications and amendments to be in writing would be contradicted by an oral condition precedent. The question in this case is whether a similar contradiction exists with the Agreement's explicit provision that each party recognized the Agreement as its "legal, valid and binding obligation enforceable against it in accordance with its terms."

The Court concludes that the alleged condition precedent cannot be reconciled with this term. In effect, Defendant contends that the condition precedent prevented the Agreement from becoming a legally binding contract so long as the condition remained unsatisfied. *See* Def.'s Mem. at 9. Indeed, as discussed above, that is the precise effect of a condition precedent. *See Amirana*, 202 A.D.2d at 784, 609 N.Y.S.2d at 98 (purpose of demonstrating a condition precedent is to establish that contract never became legally effective); *Daley*, 198 A.D.2d at 118, 603 N.Y.S.2d at 160–61 (condition precedent negates enforceability of agreement); *Studley*, 107 A.D.2d at 125, 485 N.Y.S.2d at 883 ("The purpose of [condition precedent] evidence is ... to establish that it never became legally effective"). It simply defies logic to contend that a condition precedent, which would be introduced for the purpose of proving that the Agreement never became a legally valid and binding document, would not contradict a term, agreed to by both parties, stating that "this Agreement is [the signing party's] legal, valid and binding obligation enforceable against it in accordance with its terms." The contradiction is too manifest to be denied. Accordingly, the Court concludes that the evidence of the alleged condition precedent is inadmissible.

### III. Defendant's Estoppel Defense

■ Defendant contends, in a cursory fashion, that Plaintiffs should be equitably estopped, based on their past conduct, from asserting that the Agreement is not subject to the condition precedent that De-

fendant obtain funding. *See* Def.'s Mem. at 20–21. Under New York law, the defense of equitable estoppel requires proof of three elements: 1) conduct which amounts to a false representation or concealment of material facts; 2) intention that such conduct will be acted upon by the other party; and 3) knowledge of the true facts. *See Int'l Minerals and Resources, S.A. v. Pappas,* 96 F.3d 586, 594 (2d Cir.1996); *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir. 1996); *Benincasa v. Garrubbo,* 141 A.D.2d 636, 638, 529 N.Y.S.2d 797, 800 (2d Dep't 1988). The Court notes that "the doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances." *Badgett v. N.Y.C. Health & Hosps. Corp.,* 227 A.D.2d 127, 128, 641 N.Y.S.2d 299, 300 (1st Dep't 1996).

Defendant contends that Plaintiffs' consent to delay the closing date of the Agreement from July 31, 2000 to August 31, 2000, constituted an affirmative representation by Plaintiffs that they understood that the Agreement was subject to a funding contingency, and that Defendant relied on this representation. This contention is both illogical and unsupported by any competent evidence. Beyond its conclusory assertion, Defendant has failed to adduce any evidence whatsoever of a false representation.

Even if Plaintiffs agreed in July to delay the closing because Defendant had not yet secured funding, and Plaintiffs hoped to close a deal with Defendant, this is not, as Defendant contends, evidence of a false representation that the Agreement was subject to a funding contingency. In July, the Agreement had not yet been signed. There was therefore nothing Plaintiffs could do to enforce the Agreement, whether or not Defendant had obtained funding. That was not the case in August, by which time the parties had signed and bound themselves to the Agreement. There is a substantial difference between refraining from acting because of the absence of an enforceable agreement, with the hope that an agreement could be struck, and an affirmative misrepresentation that the Agreement was subject to a funding contingency.

Furthermore, Defendant has provided no support for its contention that Plaintiffs *intentionally* misled Defendant by assenting in July to delay the closing until August. Accordingly, the Court recommends that Plaintiffs' motion for summary judgment as to Defendant's liability be granted, and that the Agreement be enforced.

## IV. Damages

Plaintiffs contend that they are entitled to specific performance in this action, and that money damages would provide an inadequate remedy for Defendant's breach. In New York, "a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *La Mirada Prods. Co. v. Wassall PLC,* 823 F.Supp. 138, 140 (S.D.N.Y.1993); *see also Guinness Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468, 473 (2d Cir.1980); *Mercantile–Safe Deposit and Trust Co. v. Trans World Airlines, Inc.,* 771 F.Supp. 90, 92 (S.D.N.Y.1991); *Connecticut Nat'l Bank v. Trans World Airlines, Inc.,* 762 F.Supp. 76, 79–80 (S.D.N.Y. 1991); *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1104–05 (S.D.N.Y.1989). Defendant argues that Plaintiffs have failed to establish the third and fourth requirements, contending that it is unable to perform and that Plaintiffs have an adequate remedy of law.

Defendant's contention that specific performance is an inappropriate remedy because, lacking the assets to pay the Purchase Price it is unable to perform, is somewhat incomprehensible, insofar as specific performance in this action would result in the same relief as contractual damages: that the Defendant tender Plaintiffs the roughly $30 million it agreed to pay in exchange for the Notes and Warrants. However, what tilts in Defendant's favor is the fourth requirement, for where a party's contractual obligation is simply to pay a specified sum, a legal remedy—the award of money damages—is readily available.

Plaintiffs argue that a determination of contractual damages would be speculative. *See* Pls.' Mem. at 13–14; Pls.' Reply Mem. at 9. While it is true that money damages are not appropriate where a court cannot arrive at a legal measure of damages with a sufficient degree of certainty, *see La Mirada Prods. Co.*, 823 F.Supp. at 141, such is not the case here. Under New York contract law, a party who establishes a breach is entitled as relief to be placed in the same economic position it would have been in had the breaching party fulfilled the contract. *See, e.g., Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir.2002); *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir.1995); *Wai Ming Ng v. Tow*, 260 A.D.2d 574, 575, 688 N.Y.S.2d 647, 649 (2d Dep't 1999). Here, to place Plaintiffs in such a position, Defendant would be required to pay the amount they agreed to in the Agreement. Indeed, Plaintiffs concede that "an award of specific performance will not affect [D]efendant any differently than an award of money damages." Pls.' Mem. at 13. Thus, because Plaintiffs have an adequate remedy at law, specific performance is not appropriate.

The amount of damages, however, may be offset if Plaintiffs failed to mitigate their damages, as Defendant alleges. "It has long been the rule [in New York] that where there has been a breach of contract, the party who suffers damage by reason of the breach has a duty to minimize the damages and any award of damages should be reduced by any unnecessary increase in damages due to the failure of the plaintiff to avoid them." *U.S. West Financial Services, Inc. v. Marine Midland Realty Credit Corp.*, 810 F.Supp. 1393, 1402 (S.D.N.Y.1993)(quoting *Golbar Properties, Inc. v. North American Mortgage Investors*, 78 A.D.2d 504, 505, 431 N.Y.S.2d 820, 822 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 856, 440 N.Y.S.2d 180, 422 N.E.2d 825 (1981)). However, a party is required only to take "reasonable actions" to minimize its damages. *See Air et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir.1985); *Slotkin v. Citizens Cas. Co. of N.Y.*, 614 F.2d 301, 313 (2d Cir.1979), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980); *Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.*, 10 F.Supp.2d 345, 370 (S.D.N.Y.1998).

Whether Plaintiffs unreasonably failed to attempt to sell the Notes and Warrants, and what price could have been secured for the Notes and Warrants at the relevant time, are questions of fact that cannot be resolved on summary judgment. Defendant contends that Plaintiffs could have mitigated their damages by selling the Notes and Warrants to another purchaser after Defendant breached the Agreement, and that they failed to do so. To support this contention, Defendant points to Tipton's deposition testimony, in which he claims that Shulkin represented to him during the negotiations that Plaintiffs had other potential buyers for the Notes and Warrants. *See* Tipton Dep. at 94–95, 133, 135. Plaintiffs do not dispute that they did not sell the Notes and Warrants; how-

 

ever, they contend that, given the nature of the high-yield debt market and prevailing market conditions during the relevant period, it would have been impracticable to "dump" the Notes and Warrants on the market and thus mitigate their damages. *See* Affidavit of James R. Erven ("Erven Aff.") ¶¶ 5–6. They further argue that, at most, million dollar blocks of Notes could have been sold in September and October 2000. *See id.* ¶ 7.

None of these questions can be resolved on this motion. Accordingly, the Court recommends that Plaintiffs' motion for summary judgment with respect to specific performance be denied, leaving for resolution the issue of damages.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiffs' motion for summary judgment be granted with respect to liability, and denied with respect to damages.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. See also Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir.2000); *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989)(per curiam).

Feb. 25, 2003.